STATE of Missouri, Respondent,

v.

Charles William WALTERS, Appellant.

No. KCD 27507.

Missouri Court of Appeals,
Kansas City District.

Oct. 6, 1975.

William G. Mays, II, Public Defender, Columbia, for appellant.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment of conviction and sentence of 15 years' imprisonment, imposed by court under Second Offender Act (§ 556.280, RSMo 1969), upon jury verdict finding Charles William Walters guilty of robbery in the first degree with a deadly weapon. §§ 560.120, 560.135, RSMo 1969.

At around 3:00 P.M., September 11, 1973, Charles Wolfe was alone, working in his upholstery shop in Columbia. A man entered the store, grabbed Wolfe around the neck, dragged him to the cutting bench, placed a sharp object at Wolfe's back and said: "Give me your money or I'll kill you." The intruder took Wolfe's billfold, containing about $30.00, from Wolfe's pocket, threw a bedspread over Wolfe's head and left. Wolfe did not see the man, but saw his arm and could tell that the robber was white and wore a short-sleeved, gold colored shirt.

Renee Spence, who lived four doors from Wolfe's shop, was standing on her front porch at around 3:00 o'clock, September 11, 1973. She saw a car, with three occupants, park between her residence and Wolfe's shop. The person on the right front seat got out of the car, went to the front of Wolfe's shop, looked in, then went to the side door and entered the shop. At that juncture the driver saw Ms. Spence. He backed to the rear door of Wolfe's shop,

sounded the horn and left. Because she was suspicious, Ms. Spence noted the license number of the auto.

When the police arrived at the scene in response to Wolfe's call following the robber's departure, Ms. Spence told them what she had observed and gave them a description of the car and its license number.

Sometime later in the afternoon, police found an auto which matched the description. As an officer was checking the vehicle, Daryl Marshall approached and said that he was its driver. Marshall, placed under arrest on suspicion of armed robbery, told police that he had been driving around with Mike Hall and the appellant as passengers in the car; that Walters asked him to stop near Wolfe's shop and he did so and Walters got out and went into the shop.

The police contacted Mike Hall, who told them the same story. They attempted to get in touch with Walters, but were not successful. The next morning, an officer went to the Crossroads Trailer Court where Walters lived with a sister. He was admitted to the trailer by Walters' sister. When the officer went toward the rear, he heard a loud crashing noise and saw Walters' feet as he went through the window. After a brief pursuit, Walters was apprehended.

Upon interrogation by officers, Walters said that he, Marshall and Hall were riding around, drinking beer and vodka, and that they stopped at Wolfe's and Marshall went in and robbed Wolfe. Later, he retracted this story and admitted that he robbed Wolfe.

At Walters' trial, Wolfe, Marshall, Hall, Ms. Spence and the police officers involved in the investigation and arrest testified for the state to substantially the above facts. Walters' statement, admitting his commission of the robbery was introduced in evidence, a pre-trial motion to suppress the statement having been overruled after a hearing. No evidence was offered by the defendant.

The jury trial resulted in a verdict of guilty and after finding the Second Offend-

er Act applicable, the judge imposed a sentence of 15 years' imprisonment.

On this appeal the sole assignment of error relates to the trial court's sustaining objection by the state to cross-examination by defense attorney of Mike Hall concerning his juvenile court record. The proceedings upon which the complaint is based are as follows:

"Q. Mr. Hall, you testified yesterday that you're 15 years old, is that right?

"A. Yes, sir.

"Q. Are you under the supervision of the juvenile court?

"MR. DOAK: Your Honor, I'm going to object to that again. * * * Once again we're getting into this same type testimony and I believe that the fact that he's under the supervision of juvenile authorities is . . . . . . it's indicative of the fact that he has a juvenile record which as we said yesterday is not a conviction that can be used in impeachment.

"THE COURT: Mr. Mays?

"MR. MAYS: Your Honor, the purpose of the question goes to show whether or not the Defendant (sic) has possible bias and has . . . . . . therefore is adverse . . . . . . has possible bias reasons why he may be testifying as he is, therefore, I am entitled to inquire as to whether or not he is under the supervision of the juvenile court and for the same reasons that we are . . . . . . have the right of confrontation.

"THE COURT: Yes, the objection will be overruled. You may answer the question.

"A. Yes, sir.

"Q. You are under the supervision of the juvenile court?

"A. Yes, sir.

"Q. And how long have you been under the supervision of juvenile court?

"A. Since I was about 12.

"Q. And for what purposes have you been . . . . . . why have you been under the supervision of the . . . . . .

* * * * * *

"MR. DOAK: I say at this time I'd like to object again and ask to approach the bench. I think at this time he is getting into the . . . . . . what would be the nature of a prior conviction which is not a prior conviction. The question, why are you under, is obviously brings up misconduct which would be a prior conviction. (sic)

"THE COURT: Yes, that objection will be sustained.

"MR. MAYS: Well, Your Honor, uh . . . . . .

"THE COURT: Mr. Doak.

"MR. MAYS: At this point and time the witness still has not elucidated as to why he's under the supervision. It could be from incidents arising from this particular incident. I admit that is true . . . . . .

"THE COURT: Not since he was 12 years old, overruled.

"Q. Mike, have you come under the supervision of the juvenile court as a result of your participation in this particular incident that we've been talking about today and yesterday with Daryl Marshall and Mr. Walters?

"A. Sir?

"Q. Have you been taken before the juvenile court as a result of your partic . . . . . . participation in this incident with Mr. Marshall and Mr. Walters in September? Have you been charged . . . . . . face any sort of charges as a result of this?

"A. I don't think so.

"Q. But your are under the supervision of the juvenile court now, is that right?

"A. Yes."

Appellant endeavors to bring this case within the ambit of the recent decision of the United States Supreme Court in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). That case involved a prosecution in which the trial court had applied an Alaska statute (§ 47.10.080(g), Alaska Stat.) prohibiting the use of juvenile court action in other courts, to provide a state's witness, on probation by order of the juvenile court after he had been adjudicated delinquent for having committed two burglaries, with a protective order which prevented his cross-examination concerning the juvenile adjudication.

The United States Supreme Court held that the effect of the order was to deny the defense the right of effective cross-examination of the witness and that the defendant's right to confrontation of witnesses against him under the Sixth Amendment to the Constitution of the United States was superior to the state's interest in protecting juveniles from exposure of the juvenile court records.

In this case, the ruling of the trial court was based upon provisions of § 211.271 1. and 3., RSMo 1969, under which adjudications of the juvenile court are not to be considered convictions and records of the juvenile court are not to be used for any purpose in civil or criminal proceedings. See *State v. Williams,* 473 S.W.2d 388, 389–390[1] (Mo.1971).

Appellant argues that under the *Davis* decision, his right of confrontation of witnesses must prevail over the state's policy, expressed in the statute, of shielding juveniles. "Specifically defense counsel wished to place before the jury the nature and dates of the offenses which led to Hall's supervision by the juvenile court to suggest that Hall was biased, and that his identification testimony was not to be believed or carefully considered in that light."

The decision in *Davis* did not amount to a general condemnation of statutes such as § 211.271 when applied to limit cross-examination of witnesses in criminal cases. As Justice Stewart noted in his concurring opinion in *Davis,* that case related to "a particular prosecution witness" "in the circumstances of this case." "In joining the Court's opinion, I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past

delinquency adjudications or criminal convictions." 415 U.S. 321, 94 S.Ct. 1113.

The circumstances of this case clearly distinguish it from *Davis*. In *Davis*, the witness involved (Green) was the only person who identified the defendant as having been seen near where a safe, stolen in the burglary with which the defendant was charged, had been found. The safe was found near the home of Green's stepfather. Defense counsel attempted to show that Green might have been uneasy because the safe had been discovered near his home, but was unable, because of the protective order, to show that such uneasiness might have resulted from his juvenile probation, resulting in an identification of another in order to exclude suspicion directed toward himself. The court in *Davis* noted that the cross-examination of Green was aimed at showing the possibility of bias, but, because of the protective order, could not bring out "*why* Green might have been biased or otherwise lack that degree of impartiality expected of a witness at trial." The court also noted that the limitation on the cross-examination permitted the witness to give testimony of obvious doubtful veracity without being subject to cross-examination which might have exposed the witness's untruthfulness.

In this case, the cross-examination produced the information that Hall was subject to the jurisdiction of the juvenile court. Appellant thus got whatever benefit might flow to him by reason of questioning the witness's bias on this account. This is a major distinction between the present case and *Davis*, in which the jury received no information whatsoever covering Green's previous record.

The only thing that appellant here was precluded from showing was the nature of the offenses which resulted in Hall's being subject to the juvenile court's jurisdiction. Appellant has not shown how the nature of the offenses, aside from the fact of the witness's being subject to juvenile court jurisdiction, would have related to any possible bias on the part of the witness. The basic fact of Hall's juvenile court experiences was before the jury. Insofar as bias, as distinguished from general attack on credibility based upon prior criminal activity, was concerned, the action which produced the juvenile court's assumption of jurisdiction was immaterial.

Another distinguishing feature of this case from *Davis* is in the significance of the testimony of the witness. In *Davis*, Green's testimony was crucial in placing the defendant at the place where the safe was found. There was circumstantial evidence to support the witness's testimony, but essentially it stood alone as direct evidence of that fact. Here, Hall's testimony was corroborated by that of witness Marshall. Appellant attacks Marshall's credibility, inasmuch as he was a prisoner at the Boone County Jail at the time of the trial. Nonetheless, Marshall's testimony was to the same effect as that of Hall, so that Hall's testimony was not crucial to the same extent Green's was in *Davis*. Furthermore, in this case the state produced appellant's confession of his responsibility for the crime. Appellant says that he questioned the voluntariness of the confession by his pre-trial motion, by his plea of not guilty and by his objection at the trial. Nevertheless, insofar as the jury was concerned, there was no contrary evidence to that produced by the state, showing a completely voluntary confession, albeit the appellant had previously attempted to place the blame on Marshall.

Therefore, Hall's testimony in this case was not of the crucial nature of that of Green in *Davis*. For that further reason, the *Davis* case does not control this case.

Judgment affirmed.

All concur.