**STATE of Missouri, Respondent,**

v.

**Terry TOLLIVER, Appellant.**

**No. KCD 28983.**

Missouri Court of Appeals,
Kansas City District.

Jan. 30, 1978.

Motion for Rehearing and/or Transfer Denied Feb. 27, 1978.

Application to Transfer Denied April 10, 1978.

Joe Hamilton Scott, Public Defender, St. Joseph, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

The defendant was convicted on two counts of felonious assault with malice aforethought upon the Erganians, husband and wife, and was sentenced to consecutive terms of twelve and twenty-five years imprisonment.

The victims testified they were shot in a robbery attempted against them as they closed their grocery store on the night of January 1, 1976. The assailant was masked and so neither was able to make identification. They did testify, however, that the man who shot them was of the same stature and gait as the defendant. The principal witness for the prosecution was a youth, Thornton, fifteen years of age. He was the lookout for the crime and worked in concert with defendant Tolliver and one Lankford. The defendant Tolliver approached the Erganians with a pistol as they entered their automobile and shot them before they could comply with the demand for money.

The defense attempted to impeach Thornton by prior statements assertedly inconsistent with his trial testimony. Objections to this and other cross-examination were sustained and the defendant contends error.

The evidence for the defense was alibi given by a former paramour of the defendant and another acquaintance, each of whom testified the defendant was with them at the date and time of the crime. On cross-examination each witness admitted prevarication to the prosecutor as to their activity at the time of the event.

The defendant contends that the trial court improperly restricted cross-examination of salient prosecution witness Thornton and should be given a new trial because of those errors. This complaint subsumes four incidents.

The first has to do with an attempt by the defense to impeach witness Thornton, who testified at trial that on the morning of the crime Tolliver and Lankford had driven to the north end of town, by his earlier statement that they had driven to the south end of town. The court excluded this examination as a collateral inquiry.

■ A witness, of course, may be impeached by extrinsic proof of a prior inconsistent statement but not as to matters which are collateral. Examination is not collateral, but as to a relevant matter—by one explanation—if the contradiction is to "any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true." *State v. Alexander*, 499 S.W.2d 439, 443[3] (Mo. 1973); McCormick on Evidence § 47 (1954). Examination is not collateral—by a more formal explanation—when the contradiction is to a matter on which proof would be allowed independently. *United States v. Blackwood*, 456 F.2d 526, 531[9, 10] (2d Cir. 1972). The general direction of their travel taken earlier on the day of the crime was of no significance, either as to the prosecution or the defense. It was not material to the transaction and a mistake by the witness to that event does not impair the truthfulness of his other testimony. The exclusion of evidence whose relevance is not apparent will not be adjudged error unless the party who seeks admission proffers the intended proof and the purpose it purports to serve. *State v. Davis*, 515 S.W.2d 773, 775[2] (Mo. App.1974). This the defendant failed to do.

■ The defendant then attempted to impeach witness Thornton by a supposed inconsistency between his trial testimony

that he did not look into the Erganian store as prelude to robbery and a prior statement to police that the defendant Tolliver went to the door of the store and there were two persons—a man and a woman—inside. The defendant contends this question was ruled a collateral inquiry and improperly excluded by the court on that ground. The record shows only that the inquiry was discontinued on the initiative of defense counsel "to lay some more foundation," but never resumed. The point is overruled.

■ The defendant next complains that he was unjustly kept from impeachment of witness Thornton as to a diagram of the scene identified by him earlier at the police station. The gist of the contradiction which the defendant sees is that, whereas at trial he testified that the automobile did not appear on the diagram, earlier Thornton had told the police that the vehicle appeared on the diagram in the proper place. This contention misrepresents the actual testimony and the conduct of the court. The trial testimony merely was that the diagram was not complete when shown to him by the police, not that the automobile did not appear in place on the drawing. The clear purpose of the objection to the question of defense counsel: "Now, just a few minutes ago you said the car wasn't on there . . .", was to avoid confusion from misstatement of evidence. The exclusion by the trial court averted that distraction.

■ The defendant then contends that the court unduly limited cross-examination by refusal to allow him to question Thornton about contradictory statements made by the witness to the police as to whether he heard Mrs. Erganian say anything in the car at the time of the robbery attempt. Counsel had earlier elicited an admission from Thornton that he told the police he heard her say "Get out" to defendant Tolliver when he invaded the Erganian car in

contradiction of a later statement that "[he] really couldn't hear what the people said in the car." Thus, the question which counsel attempted to put to the witness, and excluded by the court, was merely repetitive of earlier testimony. The action of the trial court was clearly within a permissible discretion.

■ It is fundamental, of course, that the right of cross-examination is essential to a fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 295[4, 5], 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The right of the cross-examiner—subject always to the control of the court to preclude repetition and harassment—extends not only to test the perceptions and memory of the witness but also to discredit and impeach him. *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). The trial incidents the defendant describes disclose no infringement of these principles. They show only an untutored attempt at impeachment without clear understanding of what contradiction means or of the manner to exploit the benefits. The trial court was called on repeatedly to keep out confusion from repetition, contention and misstatement. In this perspective, we conclude that these complaints are groundless.

At the outset of trial the State brought a formal motion in limine to prohibit the defense from impeachment of prosecution witness Thornton by his juvenile record. The pleading recited the prior adjudications against the witness as a juvenile, that unless prohibited the defense would use those adjudications to impeach the credibility of witness Thornton, and moved the exclusion of those records as evidence against him under the provisions of § 211.271.3.[1] The motion was taken and ruled without evidence or argument and sustained by the court. The defendant contends—the prohibition of the statute notwithstanding—that this exclusion impaired his Sixth Amend-

---

1. That statute provides, inter alia: "After a child has been taken into custody as provided in section 211.131 [of the Juvenile Code]. . . . all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter."

ment right to confront and impeach the witness in direct violation of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 374 (1974).

*Davis* does not control our decision. In that case, the prosecutor moved to protect his witness against *any* reference to his juvenile record by the defendant on cross-examination. The witness was then on probation by order of the juvenile court. In opposition to the request for protective order the defendant made it clear that he did not intend to use the juvenile adjudication as a general impeachment of credibility, but rather to show that the testimony of the witness was induced by concern for his probation should he refuse to testify for the State. That is, the defendant intended to probe the juvenile record to show the *bias and prejudice of the witness* and *not* merely to call his *general good character* into question. The trial court granted the protective order on the basis of a court rule and statute [comparable in terms to § 211.271.3] which prohibited an adjudication, order or disposition in a juvenile case admission in other proceedings.

The United States Supreme Court reversed on the rationale [l. c. 315 et seq., 94 S.Ct. 1105] that the Sixth Amendment right of an accused in a criminal proceeding to confront the witnesses against him means more than merely to require the physical presence of the accuser, but includes opportunity to cross-examine his person. That is because cross-examination is the traditional means to test the truth and credibility of a witness. The court distinguished between two different uses of cross-examination as impeachment: one discredits the general credibility of the witness and the other attacks the particular motivation of the witness to testify.

The first impeachment is usually by means of evidence of a prior criminal conviction of the witness [l. c. 316, 94 S.Ct. 1110]:

> By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustwor-

thy citizen to be truthful in this testimony. *The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness.* [Emphasis supplied]

The second form of impeachment discredits the witness by a particular attack on credibility by a cross-examination which probes the bias, prejudice or ulterior motive of the witness as they relate to the issues and persons in the case. This rests on the principle that the partiality of a witness is always relevant to discredit the witness and to affect the weight of his testimony. This method of impeachment which directs a particular attack on credibility [l. c. 316–317, 94 S.Ct. 1110]:

> [by] the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination . . .

It was this right to explore *the bias* of the witness because of his vulnerable status as probationer that the defendant in *Davis* sought to exercise and the statute prevented. The United States Supreme Court concluded that a State statute to preserve the anonymity of a juvenile offender notwithstanding [l.c. 319, 94 S.Ct. 1112]:

> . . . the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's *right to probe into the influence of possible bias in the testimony* of a crucial identification witness. [Emphasis supplied]

█ Thus, the crux of the opinion is that a State policy to protect the confidentiality of a juvenile offender record yields to the constitutional right to cross-examine for the *bias* of an adverse witness. But "[t]he Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." [*Davis*, concurrence of Mr. Justice Stewart, l. c. 321, 94 S.Ct. 1112].

The protective order before us merely prohibited use of the Thornton juvenile offense record as a general attack on his credibility. The court was neither requested, nor can the order be understood, to refuse the defense use of the prior adjudications to expose the bias and prejudice or other motive of witness Thornton which could relate to the issues. The defense made only a general objection to the motion for protective order. Now on this appeal, in an apparent move to bring himself within *Davis*, the defense contends that witness Thornton was a juvenile court probationer and was induced to his testimony for the State by concern that his status would be revoked should he refuse—a fact the jury should have been given to assess the weight to be given his testimony. There is no basis for the inference that the witness was a probationer when his testimony was given, either from the evidence or as an assumption from an offer of proof, but only the ipse dixit of the defendant himself. That bare assertion does not prove his argument. The point is denied. *State v. Ball*, 527 S.W.2d 414, 416[2] (Mo.App.1975).

The last point contends that the defense was prejudiced by prosecutor comment in rebuttal argument on the credibility of the defense alibi witnesses, a subject mentioned neither by the State nor the defendant during earlier argument, and to which the defense was denied opportunity to reply.

In his rebuttal the prosecutor commented: "Now, Mr. Tolliver and the defense attorney would have you believe that he was with two alibi witnesses—." The defendant promptly objected on the ground that he had not mentioned alibi during his argument and so the prosecutor was precluded from that subject. The objection was overruled, but the prosecutor discontinued the contention altogether. The defendant contends that the momentary reference to alibi prejudiced the verdict against him.

The rule that counsel who has the affirmative must fairly state the essential points of his case in opening argument so that the defendant may answer them applies to criminal as well as civil cases.

*State v. Peterson*, 423 S.W.2d 825, 827 et seq. (Mo.1968). The application of this principle in criminal cases has operated, virtually exclusively, to prevent a prosecutor who fails to exhort punishment in the opening argument from mention of that subject in closing argument. *State v. Hale*, 371 S.W.2d 249, 255[12–16] (Mo.1963); *State v. Wadlow*, 450 S.W.2d 200, 201[1] (Mo.1970); *State v. Fair*, 467 S.W.2d 938, 940[1] (Mo. banc 1971). Logic of principle and fairness, however, require that a prosecutor disclose not only his position on punishment but also all other points essential for conviction in time to allow the defendant opportunity to reply.

A criminal conviction requires proof that the defendant was at the scene of the crime at the time it was committed. The burden rests upon the prosecution to prove this essential element of the offense beyond a reasonable doubt. MAI–CR 3.20; Wharton on Criminal Evidence § 23 (13th ed. 1972). Alibi is a bare negation of the charge that defendant was present at the time and place of the offense and by necessary implication denies that defendant was the person who committed the crime. *State v. Hubbard*, 351 Mo. 143, 171 S.W.2d 701, 706[11] (1943); 22 C.J.S. Criminal Law § 40. Alibi, therefore, does not import *proof* but *denial* of an essential element of the prosecution case. It is in the nature of an affirmative converse upon which the defendant bears no primary burden of proof but only the burden to come forward with evidence to allow submission of the issue to the jury. The burden to prove beyond a reasonable doubt that the defendant committed the crime at the time and place alleged remains constant upon the prosecution. Missouri Bar Committee Comments on MAI–CR 3.20, Alibi; *State v. Broomfield*, 510 S.W.2d 843, 846[3, 4] (Mo.App. 1974).

The conclusion follows that alibi was not a proof essential to conviction which the prosecutor was obliged to argue in his opening, if at all, to allow the defendant opportunity to reply. The prosecutor did argue at the outset that it was the

defendant who, in concert with the two others, committed the crime. Counsel answered with an attempt to cast doubt on the identification made of the defendant by the two victims and by disparagement of the credibility of Thornton, also charged with the crime, but a witness for the prosecution. Counsel made no attempt to make use of the alibi testimony given for the defendant. A fair inference may be drawn that a defendant who fails to argue the effect of alibi testimony—when that is his only evidence and the position upon which he stakes acquittal—tacitly admits the weakness of his case. The basic principles of adversary trial allow one party to exploit the weakness of the other to lead the jury to a true result.

■ The prosecutor properly undertook to comment on the alibi testimony, even if for the first time in closing argument, and the denial of objection was properly ruled.

The judgment is affirmed.

All concur.