STATE of Missouri, Respondent,

v.

John Curtis RUSSELL, Appellant.

No. 62196.

Supreme Court of Missouri,
En Banc.

Dec. 8, 1981.

David Robards, Public Defender, Joplin, for appellant.

John Ashcroft, Atty. Gen., Peter Sadowski, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

John C. Russell was convicted by a jury of robbery, first degree; his punishment was fixed at imprisonment for five years. Judgment was rendered accordingly; the Court of Appeals, Southern District, affirmed. The case was transferred by this Court to consider again whether the trial court erred by limiting defendant's cross-examination of the juvenile who appeared as the principal witness against him. The sufficiency of evidence to sustain the conviction is not in question. Affirmed.

The juvenile witness, Jackie Lee Hicks, Jr., had been the subject of a petition in juvenile court filed May 31, 1978, which alleged that he, at age 16, committed armed robbery of a Pronto Store on March 24, 1978 (the incident in question); armed robbery on March 30, 1978; armed robbery on April 3, 1978; and burglary on April 27, 1978. He had admitted these allegations [1]; and as a result was adjudicated in need of care and treatment as a juvenile. He was committed to the juvenile home; and, after receipt of several passes, was accorded probationary after-care status.

Prior to the presentation of evidence at trial there was a bench conference to consider the extent to which the defendant would be permitted to impeach Jackie Lee Hicks, Jr., as a witness against him. Defendant contended he was "entitled under the law to cross-examine him concerning his convictions and the reasons why he is on probation now, . . . and under State vs. Summers . . . to inquire into any criminal offense . . . that he acknowledged he committed."

The Court responded that under *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the defendant would be permitted to show the juvenile's "[a]fter care status out of Youth Services that does subject him to being revoked and placed back in there. This could be a possible source of bias . . . because the state had used this pressure to get him to testify." The court ruled "against the request to show any other convictions in Juvenile Court on which he is not on any type of probation or after-care basis, or to question the witness about any crimes for which he has not been convicted."

Verna Knight, a clerk at the Pronto Store in Joplin, Missouri, was on duty between 1:00 and 2:00 a. m., March 24, 1978, when a young man entered the store and demanded money. He had his hand in his jacket pocket. The clerk heard a clicking noise and

1. It is asserted for the first time in defendant's motion for new trial that the juvenile may have been involved with car tampering also.

was afraid he had a gun. Following a second demand from him, she put money in a paper bag which the young man grabbed and ran from the store.

Jackie Lee Hicks, Jr., admitted that he committed the robbery and implicated defendant, with whom he had been acquainted since 9th grade in school. Two days before the robbery, while riding in defendant's car, defendant suggested to him that he rob the Pronto Store. The evening of the robbery, defendant had him in his car, and they rode around drinking and discussing the robbery. The defendant supplied the juvenile with a pellet gun and drove to a parking lot near the store. The defendant waited in the car while the juvenile walked to the store and robbed it. When he returned, they waited an hour, left and divided the money. The juvenile also stated that after defendant's preliminary hearing at which the juvenile testified, he was riding his bike and encountered the defendant. Defendant "told me he wasn't threatening me, he was just telling me for my benefit when I got out, if I testify against him, when I get out there is going to be a lot of people after me", and to plead the Fifth Amendment. At that time, the juvenile was out on a pass from the juvenile home.

Defendant's cross-examination of the juvenile established, among other things, that he was arrested in early May, 1978, for the Pronto robbery; that he was sent to Delmina Woods (the juvenile facility) for the armed robbery and was released on probation the day before the trial, and that failure to adhere to the probation conditions "revokes my parole." It was further developed by the cross-examination that the juvenile's confinement was for armed robbery and burglary. Upon objection, the court then advised it would permit no further questions as to the juvenile's offenses. Upon direct examination, the juvenile stated no promises or agreements were made concerning his testimony, and on redirect examination, that his probation was not conditioned upon his testimony.

Defendant denied any complicity in the robbery; denied that he had suggested Hicks commit the crime, and asserted his presence at a friend's house at the time of the robbery. Defendant stated that Hicks said that the reason he testified against him at the preliminary hearing was because the prosecutor said "he would get more time out of it" if he did not. Defendant produced another witness to support this statement, and also produced witnesses in support of the alibi.

It is in this context that appellant charges the court erred in not permitting the defendant to inquire into and to show to the jury the offenses the state's witness, Jackie Lee Hicks, a juvenile, had committed; and that the defendant was therefore denied his constitutional right to confront the witnesses against him. He asserts:

(a) Under the doctrine of *Davis v. Alaska*, the trial court should have permitted such inquires such as to expose the jury the facts from which the jury could appropriately draw inferences relating to the witness' reliability.

(b) Under the doctrine of *State v. Foster* and *State v. Summers*, the trial court erred in refusing to permit the defendant to ask Jackie Hicks whether he had committed or admitted committing certain other offenses.

The sixth amendment right to confront adverse witnesses in criminal proceedings is applicable to all criminal proceedings in state courts under the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 406–07, 85 S.Ct. 1065, 1067, 1069, 13 L.Ed.2d 923 (1965). *See State v. Holt*, 592 S.W.2d 759, 765 (Mo. banc 1980). A fundamental interest secured by the right of confrontation is a defendant's right of cross-examination. *Davis v. Alaska, supra*, 415 U.S. at 315, 94 S.Ct. at 1109; *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *State v. Brooks*, 551 S.W.2d 634 (Mo.App.1977). The right of cross-examination is essential to a fair trial. *Chambers v. Mississippi*, 410 U.S.

284, 294–95, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *Pointer v. Texas, supra,* 380 U.S. at 405, 85 S.Ct. at 1068; *Phillips v. Wyrick,* 558 F.2d 489, 493 (8th Cir. 1977).

 A primary function of cross-examination is to impeach adverse witnesses. *Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968). The purpose of impeachment is to impair or destroy a witness's credibility or render questionable the truth of his particular testimony. Because the jury is to assess credibility, it is entitled to any information which might bear significantly on the veracity of a witness. *State v. Brooks,* 513 S.W.2d 168, 173 (Mo.App.1973). "The purpose of cross-examination, however, is not limited to bringing out a falsehood, since it is also a leading and searching inquiry of the witness for further disclosure touching the particular matters detailed by him in his direct examination . . . ." 98 C.J.S. *Witnesses* § 372, at 125 (1957). Consequently, confrontation also encompasses the right to cross-examine a witness to determine the accuracy of his testimony. With respect to all functions of cross-examination, the right of confrontation requires meaningful and effective cross-examination. *Davis v. Alaska, supra,* 415 U.S. at 318, 94 S.Ct. at 1111. To limit unduly effective cross-examination constitutes constitutional error requiring no showing of prejudice. *Id.; Brookhart v. Janis,* 384 U.S. 1, 3–4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966); and, "[t]he Supreme Court of this state has repeatedly held that undue circumscription of an accused's right of cross-examination as to relevant and material matters constitutes error." *State v. Summers,* 506 S.W.2d 67, 73 (Mo.App.1974).

 Although cross-examination is a fundamental component of confrontation, it is not unlimited; limitation of cross-examination does not *per se* violate a defendant's right to confront the witnesses against him. Justice Stewart concurring in *Davis v. Alaska, supra,* observed, "In joining the Court's opinion, I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." 415 U.S. at 321, 94 S.Ct. at 1112–1113. A trial court has broad discretion "to preclude repetitive and unduly harassing interrogation," *Id.* at 316, 94 S.Ct. at 1110, and to limit attacks on general credibility and attempts to elicit irrelevant, collateral, or stale matters. Thus, each case must be examined to determine what information was sought and for what purpose in order to decide whether cross-examination was erroneously limited.

 The effect of *Davis v. Alaska, supra,* upon the public policy of the states concerning juvenile adjudications and offenses has been considered many times.[2] Suffice to say *Davis v. Alaska* holds that the right of confrontation overrides public policy such as that of Missouri under § 211.271, RSMo 1978. This right permits proof of the bias which could result from the juvenile witness's motive to lie because he is a suspect and subject to control of the juvenile authorities. It does not hold that a state court must permit the general credibility of a juvenile to be attacked by a record of juvenile adjudication or unrestrained cross-examination concerning such adjudication or acts of misconduct. *State v. Tolliver,* 562

2. *See, e.g., Alderson v. State,* 370 So.2d 1119 (Ala.Crim.App.1979); *State v. Morales,* 129 Ariz. 283, 630 P.2d 1015 (1981); *State v. Morales,* 120 Ariz. 517, 587 P.2d 236 (1978); *State v. Myers,* 117 Ariz. 79, 570 P.2d 1252 (1977); *Smith v. United States,* 392 A.2d 990 (D.C. 1978); *People v. Eatherly,* 78 Ill.App.3d 777, 34 Ill.Dec. 77, 397 N.E.2d 533 (1979); *State v. Hillard,* 398 So.2d 1057 (La.1981); *Commonwealth v. Ferrara,* 368 Mass. 182, 330 N.E.2d 837 (1975); *State v. Schilling,* 270 N.W.2d 769 (Minn.1978); *State v. Camitsch,* 626 P.2d 1250 (Mont.1981); *State v. Farrow,* 116 N.H. 731, 366 A.2d 1177 (1976); *In re B. C. L.,* 82 N.J. 362, 413 A.2d 335 (1980); *State v. Hare,* 139 N.J.Super. 150, 353 A.2d 109 (1976); *State v. Wounded Head,* 305 N.W.2d 677 (S.D.1981); *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978); *State v. Myers,* 115 R.I. 583, 350 A.2d 611 (1976); *State v. Hill,* 598 S.W.2d 815 (Tenn.Crim.App.1980); *Bilbrey v. State,* 594 S.W.2d 754 (Tex.Crim.App.1980); *Bellinder v. State,* 69 Wis.2d 499, 230 N.W.2d 770 (1975); *Salaz v. State,* 561 P.2d 238 (Wyo.1977).

S.W.2d 714 (Mo.App.1978); *State v. Walters*, 528 S.W.2d 790 (Mo.App.1975); *Hampton v. State*, 172 Ind.App. 55, 359 N.E.2d 276 (1977).

In this case, the trial court correctly applied *Davis v. Alaska, supra; State v. Summers, supra*; and *State v. Foster*, 349 S.W.2d 922 (Mo.1961), when it permitted the defendant to show the juvenile was on probation as a result of an adjudication and to present evidence of alleged pressure on the juvenile to testify for the state. The court also permitted the juvenile's admission with respect to two of his crimes. Appellant's contention that he should have been permitted to detail all four offenses charged in the juvenile's petition has been succinctly answered: "Insofar as bias, as distinguished from general attack on credibility based upon prior criminal activity, was concerned, the action which produced the juvenile court's assumption of jurisdiction was immaterial." *State v. Walters, supra*, 528 S.W.2d at 793.

The foregoing demonstrates that cross-examination of a juvenile is proper within limitations; and as with any witness, "the latitude and extent of cross-examination on collateral issues to show specific misconduct for purposes of impeachment is initially a determination to be made by the trial court within the exercise of its discretion and will be set aside on appellate review only where it is affirmatively shown that the exercise of discretion was abused." *State v. Lynch*, 528 S.W.2d 454, 458 (Mo. App.1975); *Cf. State v. Keating*, 551 S.W.2d 589 (Mo. banc 1977).

The rehabilitative and protective purpose of the juvenile court system and public policy of this state providing confidentiality concerning juvenile offenses are factors which must be weighed in the necessity for permitting and the extent of cross-examinations of juveniles. Such consideration will involve not only the factors relative to cross-examination of an adult, but will also involve elements particularly appropriate to a juvenile witness such as the circumstances of his misconduct, his subsequent conduct, and the age, understanding and background of the juvenile as they bear upon the probative value of the act of misconduct to impeach the juvenile.

Contrary to appellant's assertions and premise that the court prevented cross-examination of the juvenile witness, the record shows that defendant was permitted to and did establish by cross-examination that witness Hicks had been adjudicated as a juvenile because he had committed armed robbery and burglary; that he had been committed to a juvenile facility; that he had been placed on probation; that his probation was subject to revocation, and that as a witness against defendant, he necessarily admitted his own participation and guilt in the robbery for which defendant was convicted.

Appellant also seems to argue that if defendant could have evinced a total number of armed robberies and details of the admitted misconduct of armed robbery and burglary of the juvenile, the jury would have rejected his testimony and accepted the defendant's denial and alibi. This overlooks other evidence unfavorable to defendant such as: his denial of association with the juvenile when his own witness established that he had such association; his assertion that while he was in a friend's pickup truck at a stop light he by chance looked right and "bingo" saw the juvenile when it may be readily inferred from the testimony of defendant's driver that they had followed the juvenile after defendant delivered a scarcely veiled threat and directive to the juvenile to take the Fifth Amendment.

In the circumstances of this case it cannot be said that a jury of reasonable intelligence was not made aware of the juvenile's possible shortcomings as a reliable witness, particularly with respect to his potential bias. Accordingly, the trial court did not err in its limitation of the cross-examination of such witness.

The judgment is affirmed.

All concur.