**STATE of Missouri, Respondent,**

v.

**Orlando HOWARD, Appellant.**

**No. WD 36164.**

Missouri Court of Appeals,
Western District.

June 25, 1985.

Greg T. Spies, Philip J. Adams, Jr., Watson, Ess, Marshall & Enggas, Kansas City, for appellant.

William L. Webster, Atty. Gen., Leah A. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

DIXON, Judge.

Defendant Howard appeals from a jury conviction of robbery in the second degree, § 569.030 RSMo 1978, and sentence to seven years imprisonment. Dispositive of his appeal, is defendant's assertion that the court erred in excluding all evidence of the victim's juvenile offender status and record because the exclusion violated defendant's right to confrontation. Reversed and remanded for new trial.

Although defendant also questions the reliability and suggestiveness of the victim's pre-trial and in-court identifications, the sufficiency of the evidence, and the validity of Instruction No. 5 in light of the evidence adduced at trial, these issues need not be reached because of the dispositive nature of his first assertion. On retrial, however, the parties may be advised by the briefing on those points.

Briefly, the facts are as follows: Speer, a juvenile residing in Waldron House, a juve-

nile detention facility in Kansas City, was given money by a deputy juvenile officer to make some purchases at a local market on February 15, 1984. On returning from the market, at approximately 9:15 p.m., Speer was accosted by four black men wearing leather jackets, dark pants, and low-brimmed hats, who were descending the stairs of the house next to the Waldron House. One of the men asked Speer for a bite of Speer's "Twinkie", which Speer gave him. Another man asked Speer for some change and yet another asked if Speer had any "reefers." To these two requests, Speer said "no."

Speer felt one of the men reaching for his wallet, which was in his back pocket. Speer turned, struck the man's arm, and turned back around and received a blow to the face, which broke his glasses. Speer then fell to the ground and was pummelled and kicked. At some point during the altercation, Speer's wallet, containing money and a hunting license, was taken. The four men fled and Speer went to the Waldron House and called the police.

Speer described the four men and the incident to the police and, based on Speer's descriptions, a search was begun by car and helicopter. Speer identified defendant as defendant stood on a street corner. He then fled and was apprehended a short time later, at which point Speer again identified him as one of the assailants. The state's case depended entirely on Speer's testimony identifying defendant.

During the suppression hearing, which was held after the jury was selected but before it was sworn, while the defense was attempting to establish the unreliability of Speer's identifications, the following exchange took place:

Q. Have you ever told the prosecutor before today about that?

A. No. But my D.J.O. probation officer knew about it.

Q. D.J.O.? Will you explain what a D.J.O. probation officer is?

A. Deputy Juvenile Officer and probation officer.

Q. Okay. And what was that probation officer for?

MR. TONEY: Your Honor, we object to that. That was the subject of the motion to begin with in this case.

THE COURT: Objection sustained.

MR. SPIES: I'm sorry, your Honor, I didn't understand what the objection was.

THE COURT: The objection was that they are juvenile matters and the objection was sustained.

MR. SPIES: Your Honor, could we approach the bench?

THE COURT: You have.

(Counsel approached the bench and the following proceedings were had:)

MR. SPIES: This young man's juvenile record as to why he was in Waldron House at the time of this crime goes to his motion [*sic*] and bias for testifying today, because he was facing a maximum of fifteen years in prison on charges that he was arraigned for if he was tried as an adult. And as the Court knows if you're over the age of fourteen, which Mr. Speer is, he could have been tried as an adult; and he wanted very much to cooperate with the police, cooperate with the prosecutor's office to make sure that he was not tried as an adult.

MR. TONEY: Your Honor, the state's only response to that is that the Court has previously ruled on this matter; and, therefore, the issue is moot.

MR. SPIES: Your Honor, I don't think you have ruled on this issue. I believe you have ruled on the issue of whether you could disclose an inventory of Mr. Speer's property and at that time you indicated you didn't have jurisdiction.

THE COURT: Well, in the first place I am not aware that this witness has been certified as an adult. He is, therefore, subject to the jurisdiction of the juvenile court; and juvenile matters are confidential and *counsel is instructed not to bring into this trial*

*at any time any matter involving his juvenile record or status.*

MR. SPIES: I have a case that supports my position that his juvenile status goes to motive and bias, and in that event it is admissible, both, because of the defendant's right of confrontation.

THE COURT: I would be glad· to look at your order.

MR. SPIES: Your Honor, *State v. Tolliver* [Mo.App.], 562 S.W.2d 714 and *State v. Walters* [Mo.App.], 528 S.W.2d 790.

THE COURT: Well, the case of *State versus Tolliver*, at 562 S.W.2d 714, reiterates what this Court has just stated and that is that the constitution does not confer a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudication or criminal conviction. It can only be a beating your wife question; if you ask this witness the basis of his juvenile detention or whether or not he was subject to be prosecuted as an adult the damage is done. As far as I know he was not certified as an adult—

MR. SPEIS [*sic*]: Your Honor, I'm not trying—

THE COURT: —and the objection is sustained.

MR. SPEIES [*sic*]: Your Honor, I wasn't trying to impeach the general character, but going to his bias and motive.

THE COURT: Well, but you're talking about bias and motive about the possibility of is being prosecuted as an adult.

MR. SPIES: We won't preclude that—

THE COURT: The objection is sustained.

MR. TONEY: Thank you, your Honor.

(Proceedings returned to open court.)

(Emphasis added).

The trial then commenced. During his cross-examination of Speer, defense counsel abided by the court's explicit and all-encompassing order and did not raise the issue of Speer's juvenile record.

■ The court's clear instruction to counsel "not to bring into this trial *at any time any matter* involving his juvenile record or status" effectively prohibited defendant from raising the issue at all and thus limited his cross-examination of the witness in derogation of defendant's Sixth and Fourteenth Amendment right of confrontation.

In *State v. Russell*, 625 S.W.2d 138 (Mo. banc 1981), the Missouri Supreme Court considered the relationship between a defendant's right of confrontation, as secured by his right to cross-examine the witnesses against him, and the juvenile witness's right to be free of inquiries about his juvenile record, as secured by § 211.271 RSMo 1978, basing its analysis in great part upon the Supreme Court's decision in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This interplay was earlier recognized in *State v. Tolliver*, 562 S.W.2d 714 (Mo.App.1978), and *State v. Walters*, 528 S.W.2d 790 (Mo.App.1975). The *Russell* court stated, "*Davis v. Alaska* holds that the right of confrontation overrides public policy such as that of Missouri under § 211.271, RSMo 1978. This right permits proof of the bias which could result from the juvenile witness's motive to lie because he is a suspect and subject to control of the juvenile authorities."

Recognizing this standard, the *Russell* court and later the Eastern District, in *State v. Chandler*, 682 S.W.2d 63 (Mo.App. 1984), have affirmed the defendants' convictions, finding either no error or insufficient error to warrant reversal. However, this case is factually and procedurally distinguishable from *Russell* and *Chandler* and factually parallels *Davis v. Alaska*. In *Russell*, the defendant was allowed to

and did establish by cross-examination that witness Hicks had been adjudicated as a juvenile because he had committed armed robbery and burglary; that he had been committed to a juvenile facility;

that he had been placed on probation; that his probation was subject to revocation, and that as a witness against defendant, he necessarily admitted his own participation and guilt in the robbery for which defendant was convicted.

*Russell, supra,* 625 S.W.2d at 142. What was not permitted in *Russell* was cross-examination beyond that showing. Thus, the jury was presented evidence of the juvenile witness's possible lack of reliability and potential bias. In *Chandler,* while the court recognized that, under *Davis v. Alaska,* the trial court should have permitted an inquiry into the witness's juvenile record and status in order to show his possible bias, it found the limitation of the scope of cross-examination to have created error insufficient to warrant reversal. The court based its decision on the cumulative and corroborative nature of the juvenile's testimony, the lack of suspicion focused on the witness, and the defendant's failure to object or make an offer of proof.

Here, in stark contrast, the juvenile, Speer, was the only witness to the robbery. Speer's identification of defendant was the key to the state's case against defendant. The court's explicit ruling at the suppression hearing foreclosed *all* future reference to the juvenile's status and record. Thus, as in *Davis v. Alaska,* defendant's right to confront the witness against him was fatally impaired because he was forbidden to address the juvenile witness's possible motive or bias in testifying against him. This is particularly true since the single eye witness description and identification are vague and uncertain, with many discrepancies and conflicts.

The state does not attempt to justify the ruling; it simply asserts that it was not preserved. The claim was preserved here precisely as it was in *Russell, supra.* There was little else counsel could do in the face of the court's explicit order. The state further confuses the use of juvenile convictions or offenses to attack general credibility and an inquiry about a present conviction for which the witness is held, which tends to show motive or bias in testifying

based on future leniency or consideration. To unduly restrict the right of effective cross-examination is constitutional error requiring no showing of prejudice. *Russell, supra,* 625 S.W.2d at 141.

The judgment and conviction are reversed, and the cause is remanded for a new trial.

All concur.