STATE of Missouri,
Plaintiff-Respondent,

v.

Emmet Jason HYDE,
Defendant-Appellant.

No. 51146.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 4, 1987.

Motion for Rehearing and/or Transfer
Denied Sept. 2, 1987.

Application to Transfer Denied
Oct. 13, 1987.

Timothy J. Walk, Office of Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Kurt A. Hentz, Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Appellant, Emmet Jason Hyde, appeals from convictions for five counts of first degree deviate sexual assault, Section 566.-

070, RSMo 1978, and five counts of second degree deviate sexual assault, Section 566.080, RSMo, 1978, obtained in the Circuit Court of St. Louis County, Division No. 2, and for which appellant was sentenced as a prior offender, Section 558.016, RSMo Cum.Supp.1984, on each first degree count to ten (10) years imprisonment, the sentences to run concurrently; and on each second degree count to five (5) years imprisonment in the Missouri Department of Corrections and Human Resources, the sentences to run concurrently with each other and consecutively with the sentences on the first degree counts.

Appellant contends that the trial court erred in sustaining the state's objection to the introduction of the prior juvenile criminal record of witness J.S.R. Appellant asserts that the purpose of the evidence was to expose the bias, prejudice and ulterior motives of the witness. We affirm.

Appellant manages a small neighborhood bar in Jennings, Missouri, known as Janice's Tavern. In 1981, D.L. was twelve years old and looking for some spending money. D.L. approached appellant and asked if he could do some odd jobs around the tavern. Appellant told D.L. that he could rake leaves and mow the grass and in exchange he would be paid $5.00 a week. D.L. continued to work for appellant until April, 1985.

In 1982, appellant offered D.L. money if D.L. would "let him suck his penis." At first D.L. refused. However, appellant continued to ask D.L. to "let him suck his penis" and D.L. finally relented. Throughout the next three years, appellant continually engaged D.L. in oral sex and less frequently anal sex. Appellant usually paid D.L. $2.00 for each encounter which occurred once or twice a week from 1982 until April 3, 1985.

From the beginning, D.L. told appellant he did not want to engage in these sexual acts and that he wanted to stop. In reply, appellant said "No" and accused D.L. of throwing rocks at the tavern and threatened to "get somebody to beat [D.L.] up." D.L. believed appellant's threats and continued to engage in sexual acts with appellant.

On April 3, 1985, D.L. was coming home from school with his best friend J.S.R. D.L. told J.S.R. that he was going to stop by the tavern and borrow some money from appellant and that J.S.R. should wait at his house. When D.L. did not arrive, J.S.R. went to look for him. When J.S.R. arrived at the tavern, he looked through a window in the door of the tavern and saw D.L. performing oral sex on appellant. Later that evening, J.S.R. confronted D.L. with what he observed. D.L. subsequently told his mother and the police about his encounter with appellant.

Four to five days prior to this final incident, appellant had propositioned J.S.R., who also worked at the tavern, to engage in oral sex. When J.S.R. refused, appellant told him about his relations with D.L. to try and persuade him to do the same.

At trial, J.S.R. was called to testify on behalf of the state. On cross-examination appellant's counsel attempted to introduce J.S.R.'s juvenile criminal conviction of attempted sexual abuse first degree. Appellant claims that the story told by D.L. is false and that J.S.R. had helped him fabricate the story based on his past experiences. Appellant contends that the juvenile criminal record tends to show bias, prejudice and the ulterior motive of the witness. We find this argument to be without merit.

■ It is a well settled point of law "that an important purpose of the constitutionally protected right of cross-examination is to provide litigants with a meaningful opportunity to challenge the veracity of testimony through the process of impeachment." *State v. Johnson,* 700 S.W.2d 815 (Mo. banc 1985); *See also State v. Russell,* 625 S.W.2d 138 (Mo. banc 1981). The proper scope of cross-examination is to discover if the witness has any interest, bias, or motive for the testimony to be given. *State v. Conley,* 699 S.W.2d 50, 51 (Mo.App.1985). The scope and extent of the cross examination is a matter delegated to the sound discretion of the trial court. *Id.* It is appropriate for the trial court to limit the scope of cross-examination to preclude repetitious or harassing interrogation, attacks

on general credibility and attempts to elicit irrelevant, collateral or state matters. *State v. Russell* at 141.

■■■■ Regarding the admissibility of juvenile records, most courts and legislatures have recognized the need to keep juvenile offenders identities confidential. However, this need is outweighed by the need to discover any possible bias on the part of a crucial identification witness. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). When introduced to show the possible bias or motive of a witness' testimony, prior juvenile adjudications are admissible to impeach that testimony. *Id.* In *Davis,* the sole witness to the crime was on juvenile probation by order of a juvenile court after having been adjudicated a delinquent for burglarizing a cabin. The Supreme Court found that bias may be present when the juvenile is under the control of juvenile authorities.

The Missouri Supreme Court has held that the effect of *Davis v. Alaska, supra,* is to permit

> proof of the bias which could result from the juvenile witness's motive to lie because he is a suspect and subject to control of the juvenile authorities. It does not hold that a state court must permit the general credibility of a juvenile to be attacked by a record of juvenile adjudication or unrestrained cross-examination concerning such adjudication or acts of misconduct.

*State v. Russell, supra* at 141.

At trial, defense counsel attempted to introduce J.S.R.'s prior juvenile conviction to show that J.S.R. knew the meaning of the term "deviate sexual assault." Appellant contends that the prior conviction would establish the witness' background and his insight on what alleged acts of misconduct would be necessary for the police to arrest and charge appellant.

J.S.R.'s previous juvenile conviction does not tend to show bias or motive for the testimony that was given at trial. Nothing in the record indicates that J.S.R. was either a suspect in the case or subject to the control of the juvenile authorities. Nor does the record indicate that J.S.R. would have anything to gain by the fabrication.

Further, J.S.R. was not a crucial witness to the crime. His testimony was only corroborative of the victim's own testimony. Moreover, at trial no evidence was offered on the issue of whether the accusations had been made falsely. The only attempt to elicit evidence on this issue was through the introduction of the witness' prior juvenile record. This evidence alone does not tend to demonstrate that the accusations may have been fabricated.

■■■ During cross-examination, the jury was allowed to hear testimony by J.S.R. that he knew what kind of a story to tell police in order for them to arrest someone for deviate sexual abuse. J.S.R.'s testimony was ample for the jury to be cognizant of the facts which appellant intended to show by the introduction of the juvenile records. In this situation, the introduction of the juvenile record does not tend to show bias or motive but rather it is a general attack on the credibility of the witness. Accordingly, the trial court was correct in limiting the scope of cross-examination.

Judgement of the trial court affirmed.

CRANDALL and KAROHL, JJ., concur.