STATE of Missouri,
Plaintiff–Respondent,

v.

Van B. WELLS, Defendant–Appellant.

Nos. 53521, 53583.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 3, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1988.

Application to Transfer Denied July 26, 1988.

Ronald R. McMillin, Jefferson City, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant, Van B. Wells, was convicted of receiving stolen property in violation of Section 570.080, RSMo 1986. He was sentenced to confinement in the Marion County Jail for one year and fined $2,500. We affirm.

Defendant questions the sufficiency of the evidence in this case. In testing the sufficiency of the evidence, an appellate court assesses the facts and appropriate inferences intelligently drawn therefrom in the light most favorable to the verdict and disregards all adverse evidence and inferences. *State v. Mandina,* 675 S.W.2d 113, 114 (Mo.App.1984).

The evidence, viewed in the light most favorable to the verdict, indicates that at approximately 10:00 or 10:30 a.m. on October 8, 1986, Jeff Weaver entered Scoville's Tavern and asked to speak to its owner, the defendant in this case. After the two men spoke privately, Weaver left the tavern. Minutes later, defendant gave $200 to Alan Wasson, a tavern employee.[1] Defendant told Wasson that Weaver was "bugging

---

1. Earlier in the morning, Wasson had given the defendant $40 to pay for some toys. The $40 was evidently part of the $200 that changed hands in the transaction which forms the basis for this appeal.

him and making him nervous" and that Wasson should give the money to Weaver.

At approximately 11:00 a.m., a witness observed a man, later identified as Weaver, stealing two video cassette recorders (VCR's) from Wal Mart in Hannibal, Missouri. When Weaver returned to the tavern between 11:15 and 11:30 a.m., defendant went outside to a parking lot to speak to him. Subsequently, defendant motioned to Wasson to join them. Defendant introduced Wasson and Weaver and indicated that Wasson should pay the $200 to Weaver. Wasson watched as defendant and Weaver loaded two boxes into the defendant's car. The boxes were later discovered to be new VCR's in factory cartons with Wal Mart price tags still attached.

Weaver was arrested for the theft shortly thereafter at his home. Weaver told the police that he had sold the VCR's to the defendant. The police went to the tavern to investigate. Defendant observed the police near his car, and he joined them on the parking lot. The boxes were in plain view through the hatchback window. Defendant voluntarily opened his car for the police, who arrested defendant at the scene.

The arresting officer testified that he did not recall whether or not he mentioned to the defendant that the items were stolen. He also testified concerning the substance of the statement that defendant gave the police after his arrest. In the statement, defendant admitted that he had purchased the two VCR's, which were obviously new, from Weaver for $200, which he thought was a good deal in light of the fact that Weaver had originally asked for $250. Defendant also stated that he already had two VCR's so he had purchased these for resale and that he knew $100 each was a lower price than VCR's sell for at the store.

Although the state subpoenaed Weaver, it did not call him as a witness; therefore, defendant called him to testify in his defense. Weaver testified that he was told by a stranger that he "could probably sell things that I needed to sell over there," but that as far as he knew, Mr. Wells did not have a reputation of buying stolen property. Weaver did not inform the defendant

that the property was stolen and the defendant did not question Weaver about whether the property was "hot."

Defendant testified that Weaver had originally approached him on October 1, 1986, with the offer. Weaver returned on October 8 and again offered the VCR's for sale. According to defendant, Weaver told him that the VCR's had been in lay-a-way but he had to sell them now because he needed money. Defendant denied knowing the VCR's were stolen and claimed that Wasson had given him $40 because Wasson wanted the VCR's. The case was submitted to the jury, which returned with the verdict against the defendant.

■ "A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." Section 570.080.1, RSMo 1986. Defendant argues that the trial court erred in overruling his motion for a judgment of acquittal because there was insufficient evidence he had purchased the VCR's with the knowledge or belief that they had been stolen. Because of the difficulty in proving actual knowledge or belief by direct evidence, the statute lists certain circumstantial evidence which is admissible to prove the requisite knowledge or belief of the receiver. Among the types of evidence listed, the relevant category is "[t]hat he acquired the stolen property for a consideration which he knew was far below its reasonable value." Section 570.080.2(3), RSMo 1986. "In addition, possession of recently stolen property is a circumstance which the jury may consider with other facts and circumstances in determining the alleged receiver's mental state." *State v. Bauers*, 702 S.W.2d 896, 898 (Mo.App. 1985); *State v. Rogers*, 660 S.W.2d 230, 232 (Mo.App.1983). These other facts include whether the receiver has given false, evasive or contradictory statements about his possession of the property, suspicious behavior, and declarations or conduct inconsistent with his claim of innocence. *Bauers*, 702 S.W.2d at 898.

■ In the present case, defendant argues that the state proved his knowledge solely on the basis that he acquired the stolen property for consideration which he knew was far below its reasonable value. There were, however, additional facts and circumstances in this case. Defendant was neither young, naive nor inexperienced. He testified that, as the owner of Scoville Tavern for three and one-half years, he had met a variety of people and that it was common for people to try to sell things at the bar. Furthermore, he had previously run an auto auction where he'd had the same experience.

The peculiar circumstances of the actual transaction indicate that the defendant was aware of the nature of his arrangement with Weaver. Defendant did not give the money directly to Weaver but instructed Wasson to deliver the money to him. In giving his statement to the police, defendant refused to sign the statement until the police inserted a line which read: "I handed the money to Alan Wasson for him to give to the guy selling the VCR's." Defendant's behavior in refusing to deliver the cash to Weaver personally and in insisting that he had not done so in his statement is particularly suspicious.

In addition, Wasson testified that the defendant on two occasions had told him that they should "sit down and get [their] stories straight so they will sound exactly alike." Although Wasson was not the one who was buying the VCR's, defendant told Wasson that he "should say that the way it happened was that I [Wasson] had gave him [defendant] Forty Dollars ($40.00) on the VCR's...."

These facts were sufficient to present the case to the jury to determine defendant's guilt. Defendant's possession of the stolen property shortly after its theft, his suspicious behavior with regard to the transfer of the purchase price and his own statements are circumstances that support the proposition that defendant knew the VCR's were stolen property.

■ In his second point, defendant contends that the court erred in granting the state's motion in limine which restricted the defendant's cross-examination of a witness. Defendant wanted to question the witness, Alan Wasson, concerning his confinement in a mental institution in the early 1980's and the fact that at one time he had a conservator of his estate. Defendant felt the testimony would have a direct bearing on Wasson's credibility and would have cast doubt on his ability to perceive and properly articulate the events he had allegedly witnessed.

Cross-examination is a fundamental component of the right of confrontation, but its limitation does not per se violate the defendant's right to confront the witnesses against him. *State v. Russell,* 625 S.W.2d 138, 141 (Mo. banc 1981). The scope and extent of cross-examination is a matter delegated to the sound discretion of the trial court. *State v. Hyde,* 735 S.W.2d 746 (Mo. App.1987). Attacks on credibility and attempts to elicit irrelevant, collateral, or stale matters may be limited by the trial court. *Russell,* 625 S.W.2d at 141. In order to determine whether the limitation was an abuse of discretion we must look to the information sought and its purpose. *Id.* Cross-examination as to whether Wasson had been confined to a mental institution approximately seven years before trial, is both stale and irrelevant to his credibility as a witness. Defendant's second point is denied.

■ Defendant asserts that denial of his new trial motion was error because of the prosecutor's failure to disclose the charges pending against Weaver for a previous crime. Defendant requested disclosure of "[a]ny record of prior criminal convictions of persons the state intends to call as witnesses at a hearing or the trial." Rule 25.03(A)(7). The state complied with this request. The evidence of pending criminal charges against a witness is not provided for in Rule 25.03 and defendant's discovery request did not seek this information. *See State v. Dentman,* 635 S.W.2d 28, 31 (Mo. App.1982) (noting that items must be properly described in pre-trial discovery motions).

Defendant argues that any pending charges against the witness were material

evidence which would have a decisive effect on his credibility and should have been disclosed even in the absence of a specific request. *See State v. Collett,* 526 S.W.2d 920, 931 (Mo.App.1975). It is true that the jury is entitled to be informed "of any arrangement or agreement with a material prosecution witness because such agreement might cause the witness to be less than truthful or untruthful, and because without such information the triers of fact are unable to test the credibility of the material prosecution witness." *Id.* at 931–32. Nonetheless, *Collett* limits this principle to those arrangements or agreements "made *in fact* and disclosed by the record." *Id.* at 932. The state did not call Weaver as a witness nor is there any evidence that the state had made any deals with him for his favorable testimony.

The state was not required to disclose the information in this case because it was not requested and because there was no evidence of an agreement between the state and Weaver. Defendant's third point is without merit.

The trial court's judgment is affirmed.

STEPHAN, P.J., and DOWD, J., concur.