**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert J. BAUERS, Defendant-Appellant.**

**No. 49230.**

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 10, 1985.

Motion for Rehearing and/or Transfer Denied Jan. 7, 1986.

Application to Transfer Denied Feb. 18, 1986.

Donald L. Wolff, Keith G. Liberman, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Appellant Robert Bauers was convicted by a jury of two counts of receiving stolen property with a value in excess of $150.00, RSMo § 570.080 (1978). The Circuit Court of the County of St. Louis entered judgment on the jury's verdict and sentenced him to two concurrent terms of seven years imprisonment. We affirm.

On December 16, 1982, Officer Patrick Hourihan plus three other officers of the St. Louis County Police Department executed a search warrant at appellant's home at 1466 El Camino in St. Louis County. The warrant authorized a search of appellant's premises for one set of brown, bench-type seats, four automobile tires, one Chevy engine, and one transmission assembly. In appellant's garage, the officer's discovered a 1979 Ford truck and a 1980 Chevy Blazer. Their search also revealed other vehicle parts, tools, grinders, and torches.

When the officers asked the appellant why the blue Ford truck was in his garage, he explained that he was working on the Ford truck for a friend. When asked about the friend's identity, the appellant was unable to remember his name.

At trial, Raymond Deis testified that he was the owner of the 1979 Ford truck which was found in appellant's garage. His truck was stolen in December, 1982, while he was at work. When it was recovered, his truck's front end was removed and resting in the truck's bed, its wires were cut, its battery was missing, and its electronic ignition was gone. In addition, Officer Hourihan testified that the vehicle identification numbers on Mr. Deis' truck were removed along with its federal sticker and its state license plate.

Larry Heisel, the owner of the 1980 Chevy Blazer found in appellant's garage, identified his truck at trial. He testified that his truck was stolen on January 2, 1982, while he was at a hockey game at the Arena. Mr. Heisel also stated that his truck's body had been taken off its original chassis and placed on the frame of a different truck. Officer Hourihan additionally testified that Mr. Heisel's truck had been "retagged,"[1] that its engine and transmission numbers had been ground off, and that its federal sticker had been removed.

After the state rested its case, appellant testified that he ran an auto and truck repair business at his home. Appellant stated that in December, 1982, a friend named "Mike" whose last name and address he didn't know left the 1979 Ford truck at his home to be repainted. Mike, however, never returned to reclaim it. Appellant also explained that he had to remove the Ford's ignition because its key broke off. Appellant further testified that the Chevy Blazer was his own. He stated that he bought a 1976 Blazer and restored it with parts he acquired from twenty to thirty different auto-part purveyors over a period of one and one-half years. On cross-examination, appellant admitted that he pled guilty to stealing an automobile in 1971.

After all the evidence, the jury returned verdicts of guilty on both counts of receiving stolen property. On appeal, appellant raises three points. First, appellant contends the trial court erred in overruling his motions for judgment of acquittal because the state failed to prove all the essential

---

1. A "retagged" vehicle is a stolen vehicle with the serial number of an entirely different vehicle.

elements of the offense of receiving stolen property. Second, appellant argues the trial court erred in failing to order a new trial because the state in its opening statement failed to state facts which would establish a *prima facie* case against appellant. Last, appellant posits that the trial court erred in overruling his motion to quash the search warrant and to suppress tangible evidence.

In his first point, appellant alleges the trial court erred in not granting him a judgment of acquittal because the state failed to establish (1) the element of knowledge or belief and (2) St. Louis County as the venue of the crimes.

■ The requisite mental state to commit the crime of receiving stolen property is knowing or believing that the property has been stolen. RSMo § 570.080.1 (1978). Knowledge or belief of the stolen character of goods is seldom directly proved and is usually inferred from the facts and circumstances in evidence. *State v. Miller,* 433 S.W.2d 281, 283 (Mo.1968). *See* La Fave and Scott, *Handbook on Criminal Law* § 93 at 685–688 (1972). Evidence of the following circumstances is admissible to prove the knowledge or belief of the alleged receiver of stolen goods:

(1) That he was found in possession or control of other property stolen on separate occasions from two or more persons;

(2) That he received other stolen property in another transaction within the year preceding the transaction charged;

(3) That he acquired the stolen property for a consideration which he knew was far below its reasonable value.

RSMo § 570.080.2 (1978).[2] In addition, possession of recently stolen property is a circumstance which the jury may consider with other facts and circumstances in determining the alleged receiver's mental state. *State v. Rogers,* 660 S.W.2d 230, 232 (Mo.App.1983). These other factors include whether the alleged receiver has given false, evasive, or contradictory statements as to his possession of the property, suspicious behavior, and other conduct and declarations inconsistent with his claim of innocence. *State v. McCoy,* 647 S.W.2d 862, 865 (Mo.App.1983).

As just discussed, direct evidence of appellant's knowledge or belief is not required. It may be inferred from the facts and circumstances in evidence. *Rogers,* 660 S.W.2d at 232. On appeal, we review the facts in evidence and all reasonable inferences drawn therefrom in the light most favorable to the state, disregarding all contrary evidence and inferences. *State v. McCoy,* 647 S.W.2d 862, 863 (Mo.App. 1983). We review circumstantial evidence cases in the same manner. *State v. Harris,* 639 S.W.2d 122, 125 (Mo.App.1982). In our review of circumstantial evidence, however, we also determine whether the circumstances and facts upon which the state relies are consistent with each other, consistent with guilt, and inconsistent with any reasonable theory of innocence. *State v. Prier,* 634 S.W.2d 197, 199 (Mo. banc 1982).

In the present case, there was sufficient evidence of appellant's knowledge or belief of the stolen character of the two vehicles in his possession. On December 16, 1982, the officer found the 1979 Ford truck in appellant's garage just days after it was stolen from its owner, Mr. Deis. When recovered by the police, it had been substantially disassembled. Its battery and ignition had been removed. Officer Hourihan testified that a vehicle's ignition system is usually removed to bypass its starting system. In addition, the Ford's vehicle identification number, federal sticker, and

---

**2.** These evidentiary rules were provided by the legislature in acknowledgement of the difficult problem prosecutors face in proving the necessary mental state of receiving stolen property. V.A.M.S. § 570.080 (Comment to 1973 Proposed Code). The legislature did not intend these rules to preclude the use of other evidence to prove the appropriate mental state necessary for conviction.

license plates were missing. Finally, appellant's explanation for the Ford's presence in his garage was contradictory and equivocal. Originally, appellant told the police he was working on the truck for a friend. He did not know his name, however. At trial, appellant explained he was painting the truck for someone named "Mike" whose last name and address he could not remember, yet failed to credibly explain why it was necessary to disassemble the truck in order to paint it.

■ There were also circumstances establishing appellant's knowledge or belief that the Chevy Blazer was stolen. First, it was stolen and found in the presence of another stolen vehicle. *See* RSMo § 570.-080.2(1) (1978). Second, the Blazer had been "retagged." Third, its engine and transmission numbers had been ground off and its federal sticker removed. Fourth, its ignition had been changed. Last, appellant's explanation that he bought a Chevy Blazer and over a period of time rebuilt its body with parts he purchased could have been rejected by the jury when the state's evidence established that the Blazer's body belonged to the truck stolen from Mr. Heisel.

■ Appellant also argued that the state failed to present sufficient evidence that St. Louis County was the venue of the crimes. We disagree. Venue is not an integral part of a criminal offense and need not be proven beyond a reasonable doubt or by direct evidence, but may be inferred from all the evidence. *State v. Garrett*, 416 S.W.2d 116, 118 (Mo.1967). Venue is proved so long as the jury reasonably could have found that the alleged crime occurred in the venue county. *Id.* at 118–119. In this case, there was sufficient evidence of venue. At trial, the state admitted into evidence the search warrant which indicated that appellant's address, 1466 El Camino, was located in St. Louis County. Additionally, appellant testified that his residence, where the two trucks were found, was in St. Louis County.

In his next point, appellant argues the trial court committed plain error when it failed to order a new trial because the state failed to state facts in its opening statement which would establish a *prima facie* case. Again the complained of omission is the prosecutor's failure to state whether appellant knew or believed that the trucks in his possession were stolen.

■ The purpose of the state's opening statement is not to test the sufficiency or competency of the evidence. *State v. Hurst*, 612 S.W.2d 846, 853 (Mo.App.1981). Its purpose is to advise the jury of the facts the state intends to prove and to inform the defendant of the planned course of prosecution in order to fairly enable the defendant to defend against the charges brought against him. *State v. Barber*, 587 S.W.2d 325, 327–328 (Mo.App.1979). Accordingly, an opening statement is deemed sufficient when together with the reasonable inferences drawn therefrom, the defendant is apprised of the charges against him. *Id.* at 328.

■ In the present case, we have read the state's opening statement and find no manifest abuse of discretion prejudicial to the appellant in the trial court's refusal to grant a motion for a new trial. The state's opening statement was adequate to inform appellant of the evidence the state would present. At trial, appellant raised no objection to the state's opening statement nor indicated any surprise to the state's presentation of evidence.

Moreover, as we have already discussed, there is seldom positive evidence of a defendant's knowledge or belief of the stolen character of goods. It must be inferred from the facts and circumstances in evidence. *Miller*, 433 S.W.2d at 283. During his opening statement, the prosecutor stated that appellant had two different stolen vehicles in his garage which were stolen on different occasions. The fair and reasonable inference from these comments was that the state would attempt to prove that

the appellant had the requisite mental state for receipt of stolen property. Indeed, RSMo § 570.080.2(1) provides that a defendant's knowledge or belief in the stolen character of goods may be established by evidence that he had other stolen property from another transaction in his possession.

We last address appellant's third point on appeal. In this point, appellant challenges the trial court's ruling denying appellant's motion to quash the search warrant and to suppress evidence. Appellant contends the state's application for the search warrant and its accompanying affidavits failed to establish probable cause. We disagree.

Probable cause is determined by looking at the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *State v. Gilmore*, 665 S.W.2d 25, 28 (Mo.App.1985).[3] The issuing magistrate simply makes a practical, common sense decision whether under all the circumstances set forth in the affidavits before him, including the "veracity" and "basis of knowledge" of the persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 103 S.Ct. at 2332. Only the probability, not a *prima facie* showing, of criminal activity is the standard of probable cause. *Id.* at 2330.

As discussed in *Gates*, hearsay can be a proper basis to establish probable cause so long as there is a substantial basis for crediting the hearsay. *State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App.1982). The requisite substantial basis for use of hearsay is met if the affidavit shows that the informant learned the information through personal observation and if the informant's statements are corroborated through other

sources. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971). It is unnecessary to establish the past reliability of the informant. *Id.; Ambrosio*, 632 S.W.2d at 265.

In the present case, the warrant authorizing the search of appellant's residence did not fail for want of probable cause. The affidavit submitted by Officer Hourihan disclosed that on December 14, 1982, he was contacted by a confidential informant who related that appellant's residence was being utilized to disassemble and store stolen parts and vehicles.[4] The informant related that he had seen parts of three stolen vehicles with their identification numbers removed. These parts included the Chevy engine, transmission, bench seats, and tires for which the warrant authorized the police to search, plus two additional engines and transmissions. All these items had been personally observed by the informant in appellant's garage, basement, and unattached shed in the preceding 52 hours. Indeed, Officer Hourihan related that on the evening of December 14, 1982, he conducted a surveillance of appellant's residence and, at approximately 9:00 p.m., he observed two engines and transmissions being loaded onto a truck which subsequently drove away.

Additionally, the affidavit submitted by Officer Hourihan disclosed the informant's reliability. Officer Hourihan reported that in the past, the informant provided information which resulted in the recovery of vehicle doors, gas tanks, and a transmission. All these items had their identifying numbers removed.

■ Finally, the affidavit revealed that the appellant had told the informant that

---

3. We briefly note that the test established by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), is inapplicable despite the timing of *Gates* which was decided after the December 16, 1982, application and issuance of the search warrant in the present case. *See Massachusetts v. Upton*, 466

U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), and *State v. Horsey*, 676 S.W.2d 847, 850–852 (Mo.App.1984).

4. The magistrate possessed an additional affidavit which was substantially similar to the one submitted by Officer Hourihan.

he had stolen vehicles in the past which he had stripped at a later date. The appellant further told the informant that the Chevy engine, transmission, bench seats, and four tires, which were the objects of the search, were all stolen. The informant's disclosure of these statements was not double hearsay, as appellant alleges, but the revelation of a declaration against interest made by the appellant. *See State v. Phillips*, 532 S.W.2d 533, 536 (Mo.App.1976).

Thus, when reviewed under the totality of the circumstances, it is clear that the issuing magistrate had a substantial basis for concluding that probable cause existed. The affidavit attested to the informant's prior reliability and disclosed that the informant's information was based on personal knowledge and observation.

The judgment is affirmed.

CRANDALL, P.J., and SATZ, J., concur.