**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Willie G. ROBINSON,
Defendant–Appellant.**

No. 15383.

Missouri Court of Appeals,
Southern District,
Division Two.

June 9, 1988.

Tim Wynes, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kerr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Willie G. Robinson guilty of receiving stolen property having a value of at least $150, § 570.080,[1] and he was sentenced as a prior offender to a term of five years' imprisonment. Defendant appeals.

Defendant's first point is that the evidence is insufficient to support the verdict and that the trial court erred in overruling his motion for judgment of acquittal at the close of the state's evidence. No evidence was introduced for the defense.

In determining the validity of defendant's point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the verdict, and reject contrary and contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo.1972). All evidence unfavorable to the state must be disregarded. *State v. Summers*, 506 S.W.2d 67, 69[1] (Mo.App. 1974).

The information, in addition to charging a prior conviction, alleged that the defendant, on April 15, 1987, in Mississippi County, "with the purpose to deprive the owner of one (1) 13 inch color Emerson television, serial number 63032395 and one (1) Emerson V.C.R., serial number 204–6802340, disposed of such property of a value of at least one hundred fifty dollars knowing or believing that it had been stolen."

Defendant's brief asserts: "The state failed to establish beyond a reasonable doubt that defendant possessed the stolen property knowing or believing it had been stolen."

The television set (TV) and the video cassette recorder (VCR) described in the information had serial numbers, and defendant does not question that those items were identified as the ones which figured in the various transactions to be described.

On October 31, 1986, Debbie Pollack bought the TV and VCR, both new, and paid $400.32 for them. The TV was installed in an upstairs bedroom and the VCR was installed in the downstairs den in her home in Mississippi County. Defendant was an employee of her husband, a friend of the Pollack family, and a frequent visitor at their farm home.

On December 22, 1986, Debbie Pollack last saw the TV and VCR in her home. On that day, or possibly the following day, she returned to her home and found many items missing—"the TV and VCR and other things that were stolen." Also on De-

---

1. Except where otherwise stated, all references to statutes are to RSMo 1986, V.A.M.S.

cember 22, 1986, Catherine Owens, who did housework for Debbie Pollack, was working at the Pollack home. She saw defendant in the kitchen.

On December 22, 1986, defendant took the TV and the VCR to Richard McCullough's service station in Mississippi County and pawned them to McCullough for $100. Defendant told McCullough that the TV and the VCR belonged to defendant. He also told McCullough that he, defendant, "gave 400 and something dollars" for the items. In March 1987 defendant paid McCullough the balance of the loan and regained possession of the VCR and TV.

On April 15, 1987, defendant again took the TV and VCR to McCullough and pawned them. On April 28, 1987, defendant borrowed an additional $20 from McCullough and the latter retained the TV and VCR as security.

On May 23, 1987, an unidentified informant told Police Captain Willis Cox that defendant had pawned a VCR and a TV at Richard McCullough's service station and that the items were stolen. Captain Cox telephoned McCullough who confirmed the fact that defendant had pawned a VCR and TV. A policeman went to McCullough's pawn shop and picked up the TV and VCR and took them to the police station. Later that day defendant told Captain Cox that he bought the two items "from some dude in Sikeston for $150."

On May 29, 1987, Deputy Sheriff Turley arrested defendant and gave him the Miranda warnings. Defendant made a statement to Turley in which defendant said that he bought the items from a white male named Mike at Bruenderman's parking lot and gave $200 for them. Defendant also told Turley that he made the purchase in January.

A person commits the crime of receiving stolen property "if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." § 570.080.1.

In *State v. Stanback*, 719 S.W.2d 896, 898 (Mo.App.1986), the court pointed out that under § 560.270 RSMo 1969, later repealed, a person guilty of receiving stolen property must have acquired it from another person and not be the thief himself. The court also stated that § 570.080, the statute which superseded the repealed statute, "does not require the captor/recipient distinction. The legislative intent of § 570.080 was to create a single crime of receiving stolen property which might be committed by doing any one of several acts: receiving, retaining, or disposing of property knowing or believing it to be stolen." The court also said that § 570.080 "contemplates single-party transactions with respect to retaining or disposing of stolen property."

"The requisite mental state to commit the crime of receiving stolen property is knowing or believing that the property has been stolen.... Knowledge or belief of the stolen character of goods is seldom directly proved and is usually inferred from the facts and circumstances in evidence."

*State v. Bauers*, 702 S.W.2d 896, 898[1] (Mo.App.1985).

Evidence that the defendant acquired the stolen property for a consideration which he knew was far below its reasonable value is admissible to prove the requisite knowledge or belief of the alleged receiver of stolen goods. *State v. Bauers*, supra, at 898; § 570.080.2(3). Possession of recently stolen property is a circumstance which the jury may consider with other facts and circumstances in determining the alleged receiver's mental state. *State v. Bauers*, supra, at 898. Contradictory statements made by the alleged receiver as to his possession of the property may be considered on the issue of intent. Id.; *State v. Taylor*, 691 S.W.2d 379, 382[4] (Mo.App.1985); *State v. Applewhite*, 682 S.W.2d 185, 188[3] (Mo.App.1984).

In *State v. Mitchell*, 657 S.W.2d 23 (Mo. App.1983), the court of appeals upheld a conviction of receiving stolen property with

a value of more than $150. At p. 25 the court said:

> "Here, the defendant's recent possession of the stolen property, his contradictory statements to the police regarding his possession and his own testimony that $75.00 was an 'unusually low price' for three television sets constituted sufficient evidence to warrant the jury's finding that the defendant knew or believed that the property was stolen."

■ Defendant told Captain Cox that he bought the items in Sikeston but he told officer Turley that he bought them at Bruenderman's parking lot. It is a reasonable inference from the record that the parking lot is located in Charleston.

The state's evidence supported these findings: the TV and VCR had a combined value of approximately $400; they were stolen on December 22, 1986 from the home of Debbie Pollack, their owner; defendant was present in the Pollack home on that day; later on the same day defendant pawned the items to McCullough for $100; defendant later redeemed the items but on April 15, 1986, again pawned the two items to McCullough; defendant gave conflicting statements to McCullough, Captain Cox and Deputy Turley concerning the purchase price he had allegedly paid for the items, including a statement that he paid $150 for them; defendant gave conflicting statements concerning where the alleged purchase had taken place. The foregoing evidence was sufficient to support the verdict. Defendant's first point has no merit.

Defendant's second point arises out of the following incident which occurred during the prosecutor's closing argument:

> "THE PROSECUTOR: The defense never presented the dude from Sikeston that the defendant told Captain Cox he bought the items from. The defense didn't produce the white male named Mike that the defendant told Larry Turley he bought the items from. In fact—
>
> MRS. NARROW: Your Honor, I'm going to object. We are not required to put on any witnesses whatsoever, and there is no evidence that they were available to us."

The court overruled the objection. Defendant contends that the ruling was improper because the prosecutor's remarks "improperly shifted the burden of proof from the state to defendant." Defendant argues that the state "did not show that the witness was uniquely available to defendant and not equally available to the state," and that the state "improperly argued an adverse inference from defendant's failure to produce witnesses at trial."

State's Exhibit 1, a written statement made by defendant to Deputy Sheriff Turley, was introduced into evidence without objection. Indeed it is clear that the trial strategy of able defense counsel, Nancy Narrow, was to place the contents of that statement before the jury in order for defendant to receive the benefit of portions of it which were favorable to the defense.

During defense counsel's opening statement she referred to state's Exhibit 1 and quoted portions of it in which defendant told officer Turley that he bought the TV and the VCR from "a white male named Mike, who said he was from Sikeston," that he bought them "on Bruenderman's parking lot," and that "[Mike] told me he was going south and moving out of his apartment and said he would take $200 just to get rid of them." In giving the jury that information, defense counsel read from the statement, which was in question and answer form, four of the deputy's questions and defendant's respective answers.

During defense counsel's closing argument, which was made prior to the prosecutor's final remarks in which the challenged incident occurred, defense counsel made three references to the fact that defendant had told Deputy Turley that he had purchased the items at Bruenderman's parking lot from a man named Mike who said he was from Sikeston. Still later in her closing argument defense counsel read, from Exhibit 1, the deputy's questions and the defendant's answers which she had previously read during her opening statement.

"The trial court has considerable discretion in allowing or rejecting argument of counsel, and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted." *State v. Moore,* 620 S.W.2d 370, 373[1] (Mo. banc 1981). "A conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination, ... and the defendant is saddled with the burden of demonstrating such effect...." *State v. Webster,* 659 S.W.2d 286, 289 (Mo.App. 1983). (Citing authorities.)

On varying trial records Missouri courts have held that the prosecutor was justified in commenting on the failure of the defendant to produce a witness, *State v. Moore,* supra; *State v. Clark,* 711 S.W.2d 928 (Mo. App.1986); *State v. Wilkerson,* 559 S.W.2d 228 (Mo.App.1977); *State v. Williams,* 546 S.W.2d 54 (Mo.App.1976); *State v. Williams,* 532 S.W.2d 826 (Mo.App.1975), or that the prosecutor's comment was erroneous but not prejudicially so, *State v. Baker,* 741 S.W.2d 63 (Mo.App.1987); *State v. Webster,* supra, or that the prosecutor's comment constituted reversible error. *State v. Thrasher,* 654 S.W.2d 142 (Mo. App.1983); *State v. Valentine,* 587 S.W.2d 859 (Mo. banc 1979).

■ The prosecutor may comment on the failure of defendant to call an available witness who might reasonably be expected to give testimony in defendant's favor. *State v. Moore,* supra, at 373[2]. If a witness can be expected to testify favorably to a party, he is peculiarly available to that party, and the failure to call that witness gives rise to the inference that his testimony would actually have been unfavorable rather than favorable. *State v. Moore,* supra, at 374. Such an inference does not arise and may not be argued if the witness is equally available to the defendant and the state. *State v. Webster,* supra, at 288.

"The term 'equally available' means more than susceptibility to process, ... and is resolved by considering three factors: (1) the one party's superior ability to know or identify the witness, (2) the nature of the testimony that the witness may be expected to give, and (3) the relationship between the particular party and the witness which indicates that the witness would be more likely to testify more favorably for one party than another...."

*State v. Webster,* supra, at 288–289.

In *State v. Williams,* supra, 546 S.W.2d 54, a murder case, defendant testified that he shot the victim because an unidentified man was with the victim and the unidentified man threatened to shoot defendant. During his argument the prosecutor, referring to the unidentified man said, "Who is that man? Where is he?" Although defendant did not know the alleged witness, defendant had seen him and gambled with him on prior occasions. In rejecting defendant's contention that the prosecutor's argument constituted reversible error, the court of appeals stated, at 56: "There was no special relationship between defendant and the unidentified alleged witness. However, defendant had the superior *means* of knowledge of the existence and identity of this alleged witness and of the nature of his testimony." (Emphasis in original.) The court also pointed out that the state "had no knowledge of the existence of the alleged witness, no description of the unidentified man, and no indication of the contents of any testimony he might give."

■ The instant record, as the one in *State v. Williams,* supra, justifies the inference that the "white male named Mike," referred to by defendant in state's Exhibit 1, may have been a fictitious person. Further, the prosecutor's challenged comment was made in retaliation to defense counsel's repeated emphasis upon defendant's remarks, contained in state's Exhibit 1, which referred to Mike. Defense counsel's objection was unaccompanied by a motion for mistrial or a request for an instruction to disregard. This court holds that the retaliatory argument of the prosecutor was not improper. Defendant's second point has no merit.

Defendant's third point is directed to other portions of the prosecutor's closing arguments. It is defendant's position that the trial court erred in overruling defendant's objections to those portions. During the prosecutor's initial closing argument, the following occurred:

"THE PROSECUTOR: The defendant's suspicious conduct and his false and inconsistent statements to the police prove that he knew or believed that the VCR or the TV were stolen. Also, you can conclude that the defendant stole these items from the Pollack residence himself or disposed of the items, because a person can be—

MRS. NARROW: I object, Your Honor. I don't believe that's relevant at all. I think it's highly improper to argue or even ask anyone to infer as to whether or not he stole or burglarized that house. He's not charged with that, and it's extremely prejudicial to suggest that he did.

THE COURT: Objection overruled.

THE PROSECUTOR: You can infer that he stole the property from the house and then disposed of it, as the evidence shows, or you can infer the defendant disposed of the VCR and TV knowing that someone else had stolen them.

.    .    .    .    .

THE PROSECUTOR: So, again, whether you believe the defendant stole the property directly from the Pollack's house—

MRS. NARROW: I object again, Your Honor, for the same reason stated previously. He's not charged with stealing from that house.

THE COURT: Objection overruled.

THE PROSECUTOR: —Or whether he acquired it somehow from someone else who stole them—examine the evidence and the testimony presented by the State today, and I am confident that you will find the defendant knew or believed the items were stolen when he disposed of them on April 15, 1987.

That's the third element the State has proved beyond a reasonable doubt."

Defendant argues that there was no evidence adduced at the trial to support an inference that defendant stole the TV and VCR from the Pollack residence, that the prosecutor was arguing facts not in evidence, and that the argument encouraged the jury to base its verdict on facts outside the evidence. It should be noted that some of these complaints were not contained in the objections made to the argument.

Viewed in context, the prosecutor's remarks were directed to evidence supporting the reasonable inference that defendant knew or believed that the TV and VCR had been stolen. The essence of the objections was that the argument was improper because defendant had not been charged with stealing. For the reasons which follow, this court holds that the prosecutor's comments were permissible and that the objections were properly overruled.

"The prosecutor has the right to argue reasonable inferences from the evidence and, additionally, he has the right to draw any inference from the evidence which he believes in good faith to be justified." *State v. McDonald,* 661 S.W.2d 497, 506[15] (Mo. banc 1983). In *State v. Sours,* 633 S.W.2d 255, 258 (Mo.App.1982), this court said:

"Section 570.080 ... was derived from the Model Penal Code § 223.6 (Official Draft and Revised Comments, 1980) which defines the receiving offense in terms similar to those adopted in this State. The comments say that, 'If the prosecutor can prove the requisite state of mind to deprive the true owner of the property, it makes little difference whether the jury infers that the defendant took directly from the owner or acquired the goods from another person who committed the act of taking.' Id. at 233–234. The purpose of the section was to make it impossible for the appellant to argue (as defendant does here) a 'technical defense based upon legal distinctions between the closely related activities of

stealing and receiving.' Id. at 232. In a nutshell, we hold the present Missouri statute makes the *act of disposing* of the stolen property the offense of receiving stolen property." (Emphasis in original.)

Defendant was charged with violating § 570.080. Subdivision 2 of § 570.080 reads:

"2. Evidence of the following is admissible in any criminal prosecution under this section to prove the requisite knowledge or belief of the alleged receiver:

(1) That he was found in possession or control of other property stolen on separate occasions from two or more persons;

(2) That he received other stolen property in another transaction within the year preceding the transaction charged;

(3) That he acquired the stolen property for a consideration which he knew was far below its reasonable value."

In *State v. Sweeney*, 701 S.W.2d 420, 423–424 (Mo. banc 1985), the court said:

"Subdivision 2 of 570.080 adds a nonexclusive list of circumstantial evidence deemed admissible to demonstrate knowledge or belief. Most certainly such listing broadens and does not narrow or limit the scope of circumstances which may be found relevant and material to the issue.... Subparagraphs (1) and (2) of subdivision 2 deal with and render admissible evidence of prior specific criminal activity which might otherwise be objectionable. Subparagraph (3) permits use of evidence that a defendant acquired property for a price far below the property's 'reasonable value' to show knowledge or belief that the property was stolen. While it is not indicated that such evidence might raise a presumption of guilt, subdivision 2 and its subparagraphs satisfy a variety of evidentiary challenges that might be raised to those particular items of circumstantial evidence. Despite the fact that each of the three referenced subparagraphs deals with situations involving 'stolen property' and the admissibility of particular circumstantial evidence, the list, as stated above, is not intended to be exclusive....

. . . . .

Additionally the listing in subdivision 2 of certain circumstantial evidence declared to be admissible, in no way limits *direct proof* of the elements of the crimes proscribed in § 570.080.1." (Emphasis in original.)

It is true, as defendant points out, that defendant was not on trial for the offense of stealing. It is also true, however, that in some factual situations defendant may be convicted of both stealing and receiving, even though he alone is involved and the same property was the subject of both offenses. See *State v. Walker*, 659 S.W.2d 349, 351–352 (Mo.App.1983). It is a familiar principle that evidence of offenses proximate to the offense for which defendant stands trial is admissible if the offenses are so connected in time and circumstances with the charged crime that one cannot be fully proved without proving the other. *State v. Reilly*, 674 S.W.2d 530, 534 (Mo. banc 1984).

In *State v. Hunt*, 280 S.W.2d 37 (Mo. 1955), a prosecution for buying and receiving goods under § 560.270 RSMo 1949, later repealed, defendant was found guilty of receiving stolen goods which had been taken from a hardware store. The court held that testimony of the two sellers, concerning selling to defendant, under the same general arrangement, articles stolen in previous burglaries was properly admitted to show guilty knowledge. To similar effect see *State v. Park*, 322 Mo. 69, 16 S.W.2d 30 (1929).

"In a prosecution for receiving stolen property, guilty knowledge is the gist of the offense, and evidence of other crimes is admissible to establish such knowledge." Wharton's Crim.Evid., 14th Ed., Vol. 1, § 182, p. 773.

Defendant was not charged with stealing and it is not necessary to rule whether the evidence was sufficient to support a conviction for that offense. There was evidence

that defendant was in the Pollack home on the day the TV and VCR were stolen and that defendant pawned those items on the same day to McCullough. A jury composed of reasonably intelligent people could logically infer that defendant was himself the thief. It was necessary for the state, in proving the offense on trial, to show that the defendant, at the time he disposed of the TV and VCR on April 15, 1987, knew or believed that the TV and VCR had been stolen. There could be no higher proof of such knowledge than a showing that defendant himself stole them.

The evidence supported the inference that defendant himself was the thief. It was proper for the prosecutor to allude to that inference. It was also proper for the prosecutor to argue that so long as defendant knew that the items were stolen, guilt of the charged offense did not depend on the identity of the thief, whether defendant or someone else. Defendant's third point has no merit.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.