**STATE of Missouri, Respondent,**

v.

**Dennis L. GOTT, Appellant.**

**Dennis L. GOTT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 15847, 16319.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 9, 1990.

John A. Klosterman, Columbia, for appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

A jury found defendant Dennis Gott guilty of receiving stolen property (§ 570.-080,[1] a class C felony), and he was sentenced, as a prior offender, to a term of five years' imprisonment. Defendant appeals, and that appeal is Case No. 15847.

After the jury trial, defendant filed a motion under Rule 29.15, seeking relief from the conviction. An evidentiary hearing was held on that motion and it was denied. Defendant appeals from that denial, and that appeal is Case No. 16319. The appeals have been consolidated and will be dealt with separately in this opinion.

## No. 15847

Defendant's first point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise, because there was not sufficient evidence "to convince a rational trier of fact that defendant disposed of property of another knowing or believing that it had been stolen."

In determining the validity of defendant's point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the finding of guilt, and reject contrary and contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo.1972). All evidence unfavorable to the state must be disregarded. *State v. Unverzagt*, 721 S.W.2d 786 (Mo. App.1986).

"A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." § 570.080.1.

Knowledge or belief of the stolen character of goods is seldom directly proved and is usually inferred from the facts and circumstances in evidence. *State v. Robinson*, 752 S.W.2d 949, 951 (Mo.App.1988). To similar effect see *State v. Sutton*, 764 S.W.2d 157, 158 (Mo.App.1989). Possession of recently stolen property is a circumstance which the jury may consider with other facts and circumstances in determining the alleged receiver's mental state. *State v. Robinson*, supra, at 951.

Viewed favorably to the verdict, the evidence justifies the following resume of the facts. Mr. and Mrs. Terry Geter lived in a house in a rural area north of Fisk. At 6:30 p.m. on January 28, 1988, Mr. and Mrs. Geter came home. When Mrs. Geter had left the house two hours earlier, everything was intact. On their return, however, they found that the front door was "busted open," the house had been entered, and several items had been stolen. Among the missing items were state's Exhibit 1 (a

---

**1.** All references to statutes are to RSMo, 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

camera), Exhibit 2 (a necklace), and Exhibit 3 (two gold chains). Other missing items included a man's wedding ring with a "cut in the bottom of it," and costume jewelry.

At the trial the Geters identified the respective exhibits as the property which had been stolen. The camera had a value of $300, Exhibit 2 had a value of $370, and Exhibit 3 had a value of $160.

On January 29, 1988, between 4 and 4:45 p.m., defendant entered the pawn shop of Brenda Lillard in Dexter. Defendant told Mrs. Lillard that he had some items for sale. She purchased Exhibits 1, 2, and 3 from defendant for a price of $75. Defendant, using his own name, signed a bill of sale, state's Exhibit 4, purporting to transfer title from the stolen items to her.

Before the purchase was consummated, Mrs. Lillard weighed the necklaces on a pennyweight scale and looked at the camera. She testified, "I told [defendant] that I really would rather he wait until my husband got back. He was out of town, and I had rather he wait until my husband got back because I don't know too much about cameras, and [defendant] said, 'Well, just make me an offer.'" Thereupon she offered defendant $75 and he accepted.

Mrs. Lillard also testified that defendant had a few more items with him which she did not purchase. Those items included costume jewelry and a "wedding band that had been cut at the bottom."

On February 8, 1988, Mrs. Geter, the burglary victim, was in Mrs. Lillard's store and saw Exhibits 1, 2, and 3. She notified the sheriff and these proceedings were instituted. Both Mr. and Mrs. Geter testified that they did not know defendant and had never authorized him to be in their house or to take possession of the stolen items.

Defense witnesses, consisting of defendant's mother and three brothers, testified in support of his alibi defense. They claimed that when the sale took place at the pawn shop, defendant was elsewhere with them.

Approximately 24 hours after the camera, the necklace, and the two gold chains had been stolen from the Geter residence, defendant sold them to Mrs. Lillard for $75. They had a combined value of $830. Missouri cases have held that *buying* recently stolen property for a price far below its reasonable value is evidence lending support to a finding that the purchaser had knowledge that the property was stolen. See *State v. Wells*, 752 S.W.2d 396 (Mo. App.1988); *State v. Priesmeyer*, 719 S.W.2d 873 (Mo.App.1986); *State v. Robinson*, 752 S.W.2d 949, 951[1] (Mo.App.1988). Similarly, the sale or attempt to sell the property at a price much smaller than its value tends to show that the seller had such knowledge. 76 C.J.S. Receiving Stolen Goods § 19, pp. 47, 48. Additionally, defendant was eager to make an immediate sale, for he was unwilling to await the return of Mrs. Lillard's husband, who might have made a higher offer. This court holds that the foregoing evidence was sufficient to support the verdict. Defendant's first point has no merit.

■ Defendant's second point is that the trial court committed "plain error," Rule 30.20, "in that by returning the jury to open court after it had deliberated for two hours and 23 minutes and then questioning the jury foreman, the trial court exerted an improper influence on the jury's deliberation and coerced a guilty verdict by indicating that the jury would not be dismissed unless it reached a unanimous verdict."

The record contains the following:

"(The jury retired to consider its verdict at 1:47 o'clock p.m., and at 4:05 o'clock p.m. were returned by the Court to the courtroom, and the following proceedings were had, to-wit:

THE COURT: Who is the foreman of the jury?

JUROR COOPER: I am, Your Honor.

THE COURT: I want to ask you one or two questions. Listen carefully to my question. Do not answer anything I don't ask, don't volunteer a word. If it can be answered 'yes', say 'yes'. If it can be answered 'no', say 'no,' and under no circumstance volunteer anything, and listen carefully to my question and if you don't under (sic) my question, don't at-

tempt to answer it, tell me you don't understand it.

JUROR COOPER: Yes, sir.

THE COURT: In your opinion if the jury is permitted to return to deliberate, will you be able to unanimously reach a verdict?

JUROR COOPER: I'm not sure, Your Honor.

THE COURT: Now, listen carefully to my question, I'm going to repeat it three times so there will be no chance of misunderstanding it. I'm going to ask you to tell me numerically by number how you stand. Under no circumstances tell me for whom, and the answer to my question will be something like six and six, nine and three, eight and four, or something of that nature. Just numbers, nothing else. I'm going to repeat that. I'm going to ask you how you stand numerically, and the answer to that will be just numbers, eight and four, six and six, five and seven, and numbers like that. Do you understand that?

JUROR COOPER: Yes, sir.

THE COURT: Can you tell me how the jury stands numerically?

JUROR COOPER: Eleven to one.

THE COURT: All right, you have been out now two hours and twenty minutes, about. That is not a very long time. It's still early in the day, so I will ask you to return to the jury room and continue to deliberate. Thank you.

(The jury returns to continue deliberating at 4:08 o'clock p.m. and at 4:20 o'clock p.m. returned the following verdict:)

'We, the jury, find the defendant Dennis Gott guilty of receiving stolen property as submitted in Instruction No. 5.

/s/ Jerry D. Cooper, Foreman'

Whereupon, the verdict was accepted and ordered recorded, the jury was discharged."

The length of time which a jury is allowed to deliberate and the determination of whether to read to the jury MAI–CR2d 1.10 (superseded by MAI–CR3d 312.10), the so-called hammer instruction, are matters committed to the sound discretion of the trial court. *State v. Anderson*, 698 S.W.2d 849, 853[8] (Mo. banc 1985). In order to establish an abuse of that discretion, it must be shown, based on the record of what was said and done at the time of trial, the verdict of the jury was coerced. Id.

"Being told by a juror that further deliberation would not be helpful in resolving a deadlock does not preclude the trial judge from reading the hammer instruction, and certainly does not prevent the trial judge from attempting to facilitate a verdict *by giving no additional instruction and allowing further time for deliberation.*"

Id. (Emphasis added.)

Here, the court did not give the hammer instruction but merely made a meticulously phrased inquiry which elicited from the foreman the information that the jury stood "11 to 1." After receiving that information the court made a brief non-coercive comment which included a request that the jury resume its deliberations.

Defendant argues that "under the totality of circumstances" the trial court coerced a guilty verdict. Defendant points out that the state's evidence "was hardly complex, that the presentation of all the evidence took only one hour and 35 minutes," that the foreman indicated that he was not sure that the jury would reach a unanimous verdict if it resumed its deliberations, and that the verdict was returned after the jury deliberated an additional 12 minutes.

None of the foregoing factors, singly or in combination on the instant record, demonstrates that the trial court coerced the verdict. See *State v. Franklin*, 751 S.W.2d 128, 130[2] (Mo.App.1988). Defendant's second point has no merit.

The judgment is affirmed.

## No. 16319

Defendant's sole point is that he was entitled to relief on his Rule 29.15 motion and the trial court erred in ruling otherwise, because defendant was denied effective assistance of counsel "in that trial counsel failed to move for a mistrial when the court initiated contact with the jury by

returning the jury to open court, questioning the jury foreman about how the jury stood, and indicated that the jury would not be dismissed until it reached a unanimous verdict thus coercing a guilty verdict."

This point is based upon the events set forth in the discussion of defendant's second point in Appeal No. 15847. The instant point misstates the record in that the trial court did not "indicate that the jury would not be dismissed until it reached a unanimous verdict." No such construction reasonably could be placed upon the trial court's statements to the jury.

Defendant seeks to blame his trial counsel for failing to move for a mistrial based upon the colloquy between the court and the jury foreman in the presence of the jury. Counsel cannot be faulted for failing to make an invalid motion. Nothing in the record justified the declaration of a mistrial and defendant incurred no prejudice by reason of counsel's commendable failure to request one.

The judgment is affirmed.

HOGAN, C.J., and MAUS, J., concur.