STATE of Missouri, Plaintiff–Respondent,

v.

Terry Ray MURPHY, Defendant–Appellant.

No. 16632.

Missouri Court of Appeals, Southern District, Division One.

Oct. 1, 1990.

**430**

William L. Webster, Atty. Gen., Christine A. Alsop, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Donald E. Sotta, Sotta and Crane, Joplin, for defendant-appellant.

MAUS, Judge.

Defendant Terry Ray Murphy was charged with selling Alprazolam # 4, a controlled substance, to Jeff Trotnik (Trotnik), an undercover police officer, in violation of § 195.240. Defendant was tried as a prior offender under § 558.016 and § 557.036.4. After a jury found defendant guilty, the court sentenced defendant to ten years' imprisonment. Defendant states four points on appeal. The following is a summary of the relevant facts.

Trotnik was working in an undercover operation for the Joplin Police Department investigating the illegal sale of prescription drugs. As part of this operation, on September 28, 1988, Trotnik went to defendant's apartment. There he was admitted by the defendant. An unidentified white male was sitting on a couch. Trotnik told defendant that he was having some anxiety problems and needed some medication. Defendant sold Trotnik seven "Xanax" pills for ten dollars.[1] In addition, defendant informed Trotnik about the different dosage levels and recommended ways to ingest the drug. After putting the pills in an envelope, defendant told Trotnik that when he received another shipment, he would arrange a time for Trotnik to buy more drugs.

During this event, Trotnik was wearing a microphone hidden on his body that transmitted signals to a recorder operated by another officer, Sergeant Copeland. The tape recording from this meeting between defendant and Trotnik was admitted into evidence over defendant's objection.

■ The defendant's first point is that the trial court erred in admitting the tape recording. To support this point he cites the seven criteria listed in *State v. Spica*, 389 S.W.2d 35 (Mo.1965), cert. denied, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966). He argues that the tape recording was improperly admitted because the state did not establish the second criteria, that is, that Copeland was competent to operate the recording device.

An extended discussion of the manner in which the cited seven criteria are to be applied is not necessary in this case. There may be, however, circumstances where testimonial proof of the competency of one who operated a tape recorder is indispensable to the admissibility of the tape recording. While the tape recording is not of the highest quality, it is audible and understandable. In addition, Trotnik testified that the tape recording was an accurate

---

1. The drugs, after analysis, were found to contain the drug "Alprazolam".

transcription of the conversation that took place.

"Although there was no showing that [Copeland] had ever done that before and obtained a good recording, or that he had received training on the procedure, or that the process was so elementary that no training was required, the fact of an audible and understandable recording was made remains. That fact would tend to establish that [Copeland] was competent to operate the machine, a conclusion analogous to the holding in *United States v. Moss*, [591 F.2d 428 (8th Cir.1979) ]." *State v. Settle*, 670 S.W.2d 7, 11 (Mo.App.1984).

*Cf. State v. Wahby*, 775 S.W.2d 147 (Mo. banc 1989). The point is denied.

■ By his second point, defendant asks this court to reverse his conviction for the reason he did not receive a fair trial because "the prosecutor used improper tactics". He asks the court to do so upon the basis of "plain error" under Rule 30.20. The point is not based upon erroneous actions of the trial court. Nonetheless, it is required that the point state briefly and concisely what erroneous and prejudicial tactics of the prosecutor that are the basis for the request. This abstract statement presents nothing for appellate review. Rule 30.06. That total failure of the point cannot be ignored. Moreover, a gratuitous review of the argument under this point demonstrates that the tactics complained of, even if erroneous, did not result in manifest injustice or a miscarriage of justice. Rule 30.20. The point is denied.

■ The defendant's third point is that the trial court erred in failing to sustain his objections to questions asked in the cross-examination of Jack Murphy, the defendant's father. That point has this background. On direct examination of Jack Murphy, the defendant established that he had been taking Xanax under the direction and prescription of Dr. Jobe, a psychiatrist, since 1984. The cross-examination complained of resulted in the following evidence. Jack Murphy couldn't remember if he picked up 30 Adipex prescribed by Dr. Pence, 30 Ionamin prescribed by Dr. Pence,

30 Fiorinal 3 prescribed by Dr. Piedra, or 500 Duricef prescribed by Dr. Freeman for the defendant. The witness acknowledged the defendant consulted Dr. Singleton and Dr. Kilbane but could not say whether the defendant had also consulted Doctors Levano, Smith, Cales, Bazzano, Bland and Green, or Dailey. When asked if he picked up, for the defendant, 115 different purported prescriptions for 4,821 pills from October 6, 1983 through July 1, 1985, Jack Murphy replied, "I wouldn't know on that".

The defendant elicited testimony from Jack Murphy to establish a legitimate and necessary purpose for the defendant to be in possession of Xanax under a prescription. He opened up the subject of the defendant's possession of drugs under prescriptions by doctors. To rebut a favorable inference from that direct testimony, the state properly inquired concerning the amount and types of drugs possessed by the defendant and the different doctors from whom the prescriptions were purportedly obtained. *State v. Jordan*, 646 S.W.2d 747 (Mo. banc 1983); *State v. Dancy*, 541 S.W.2d 35 (Mo.App.1976). The third point has no merit.

■ In his last point, defendant contends the trial court erred by allowing the prosecutor to comment in his closing argument on defendant's failure to testify. Defendant points to the following portion of the prosecutor's argument.

"[The Prosecutor:] He [the Defense Attorney] wants you to believe he didn't know the other person. He knows the other person and his client knows the other person. Now, ask yourself why he didn't bring that person in and put him up on the stand? There is only one reason and that's because what Jeff Trotnik told you was the truth. Truth. And I assure you that if he had thought the other person could have gotten his man off, he would have brought him in. He had the power; he didn't. The only witnesses they brought were Terry Murphy's parents. They weren't there, they don't know anything about what happened. There were three people in the room—

[Counsel approached the bench and the following proceedings were had out of the hearing of the Jury:]

[Defense Counsel:] Your Honor, defense suggests that [The Prosecutor] made an improper comment on the failure of the Defendant to testify.

THE COURT: Sustained.

[The Prosecutor:] Your Honor, that's not a reference on his failure to testify, he could have called Chris Moore, the other person in the room.

THE COURT: That will be overruled. [The proceedings returned to open court].

[The Prosecutor:] The only person that was in the room when that buy came down, who came in and testified was Jeff Trotnik.

[Defense Counsel:] Same objection, Your Honor.

THE COURT: Overruled.

[The Prosecutor:] They had subpoena power to bring him in when they wanted, including the other guy. The only evidence that you heard about that drug transaction was from Jeff Trotnik. Now, ask yourself why. Why that is; why they didn't avail themselves of their opportunity to bring all the testimony that was relevant to this case. The reason why is because the truth is that Jeff Trotnik told you, and the truth is the Defendant is guilty."

While it is well established by rule, statute and case law that a prosecutor may not comment on defendant's failure to testify, only direct and certain references to such failure are prohibited. *State v. Sidebottom*, 753 S.W.2d 915 (Mo. banc 1988); *State v. Robinson*, 641 S.W.2d 423 (Mo. banc 1982); § 546.270; Rule 27.05. "The key words to the rule and statute are 'accused' and 'testify' and the test is whether the prosecutor's comment called the jury's attention to the accused's failure to testify." *State v. Frankoviglia*, 514 S.W.2d 536, 541 (Mo.1974).

The evidence developed the fact that a third person was sitting on the defendant's couch when Trotnik entered the defendant's apartment. Trotnik testified a third voice is heard on the tape recording giving advice on the use of the drugs. It was a permissible inference that the person seated on the couch was a friend of the defendant's and present in the apartment. If no drug sale occurred, it is a reasonable inference the defendant would have called that person as a witness. The prosecutor was entitled to argue any adverse inference resulting from defendant's failure to produce that witness who would be reasonably expected to testify in defendant's favor. *State v. Clark*, 711 S.W.2d 928 (Mo.App. 1986); *State v. Webster*, 659 S.W.2d 286 (Mo.App.1983). The prosecuting attorney made no direct reference to the defendant's failure to testify. Only a strained construction of the argument could be understood to refer to the defendant's failure to testify. The argument is reasonably construed as referring to the defendant's failure to produce the third person. *State v. Hernandez*, 776 S.W.2d 34 (Mo.App.1989). The objection was properly overruled. The last point is denied and the judgment is affirmed.

PREWITT and CROW, JJ., concur.