**STATE of Missouri, Respondent,**

v.

**Samuel E. GILLIS, Appellant.**

**No. WD 42019.**

Missouri Court of Appeals,
Western District.

March 5, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1991.

David S. Durbin, Appellate Defender, Terri L. Backhus, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, C.J., ULRICH, J., and WASSERSTROM, Senior Judge.

NUGENT, Chief Judge.

Defendant Samuel E. Gillis appeals his conviction by a jury of stealing over $150.00 in violation of § 570.030.[1]

In his four points on appeal defendant Gillis complains of the admission of evidence of other crimes not charged against defendant (Points I, II and III), and of the improper argument of the prosecutor about an absent "witness" (Point IV).

Viewed in the light most favorable to the verdict, the evidence sufficiently establishes the following facts:

During the night of July 28–29, 1988, burglars entered a storage garage of Sunglo Skylight Products in Kansas City. The garage contained a bundle of aluminum bars and the thieves stole five of them,

---

1. Revised Statutes of Missouri, 1986.

each valued at $126. The manufacturer had made those bars to Sunglo's specifications and sold them only to Sunglo. Burglars had entered the garage several times before, the latest entry only the night before on July 27–28. Because of those burglaries, Sunglo had barred the garage doors by piling nine-by-ten foot skids against them. On the night of July 28–29, however, burglars entered by kicking out the plywood covering a broken window.

On the morning of July 29, Sunglo employees discovered the burglary and found the prints of tennis shoes on several aluminum bars lying on the garage floor.

Around nine o'clock that morning, defendant Gillis appeared at a salvage yard, Acme Metals, a buyer of nonferrous recyclable materials. He came alone driving an old, "beat up" pickup truck loaded with five aluminum bars later identified as the bars stolen from Sunglo. He and an Acme employee unloaded the bars and placed them on a scale.

Sunglo's shipping manager had advised Larry Hand, Acme Metal's manager, to watch for stolen Sunglo aluminum. Mr. Hand recognized the bars on defendant Gillis' truck as Sunglo's stolen aluminum and immediately notified Sunglo and the sheriff's office. Shortly, a deputy sheriff and two Kansas City police officers arrested the defendant.

Police identified defendant's palm print on one of the aluminum bars he had put on the scale at Acme Metals and his tennis shoe prints as matching the shoe prints left by a burglar on aluminum bars remaining in Sunglo's garage.. Larry Hand also recognized the defendant as a man he met on July 28 at a nearby service station driving the same dilapidated pickup truck. He noticed several aluminum bars in the truck when the defendant had offered them for sale. The bars did not match the bars defendant Gillis had in his possession the next day at Acme Metal.

At trial, defendant Gillis testified that the pickup truck belonged to a man he knew at a neighborhood convenience store called "Sarge." He did not know Sarge's last name. On July 28 he hired Sarge to come by the defendant's mother's house and pick him up at ten o'clock the morning of the 29th and take him to Payless to pick up some building materials for a construction job a Rev. Bailey had hired him to do. Mr. Gillis testified that Sarge came by about 7:00 or 7:15 on the morning of July 29 to defendant's surprise. Sarge apologized, saying that he came by early because he had to "drop some iron or something off at a junkyard." The defendant thought he had no choice but to go with Sarge on this side trip. He needed Sarge's pickup truck to get the materials at Payless. He testified that on the way to the junkyard, Sarge lent him a pair of tennis shoes so that he would not ruin his dress shoes when they walked around the junkyard.

On the way to the junkyard, Mr. Gillis testified, the truck began "acting up," so Sarge dropped off at a service station to "check on some battery cables," instructing the defendant to coast the pickup on down the hill to the junkyard. Mr. Gillis did so, and when he reached the bottom of the hill he turned the pickup into the junkyard and parked it by the dock. Sarge came down the hill, put some vice grips on the battery cables and left. Mr. Gillis then helped the junkyard worker unload the pickup and place the load on the scale.

Each of defendant's first three points on appeal bottoms itself on a claim of a violation of the general rule that in a criminal trial the court may not admit evidence of the defendant's participation in another unrelated and uncharged crime unless that evidence logically tends to prove the defendant's guilt of the crime for which he stands trial. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo.1985).[2] If none of the evidence in the trial connects the defendant to other unrelated and uncharged crimes, the rule does not apply. *State v. Gilmore*, 681 S.W.2d 934, 942 (Mo.1984); *State v. Morris*, 712 S.W.2d 728, 731 (Mo.App.1986). Accordingly, defendant's first three arguments must fail because nothing in the

**2.** Since October 28, 1982, the Missouri Supreme Court has heard all cases sitting en banc.

evidence regarding earlier burglaries of Sunglo had the slightest tendency to link defendant Gillis to those crimes.

In his fourth point, the defendant cries foul because in his closing argument the prosecutor argued to the jury.

> Ladies and gentlemen, just as you can say that, you can look at this case and you can say there is no doubt in your mind that Sam Gillis was in that warehouse at 3030 Cherry on July the 29th because his footprints are in there, and this is the State's case, ladies and gentlemen, right here. He cannot get away from that, and he knew he couldn't all along until he finally found out this great story about Sarge.

> And you'll remember that, ladies and gentlemen, he had that story down pat. He sat in his truck, and Sarge said they were going out to the salvage yard. Well, I've got my brown good shoes on so I guess I'm going to have to go back and change. Well, say, Sarge can help you out here. He's got an extra pair of tennis shoes here. Boy, these tennis shoes just happen to fit you. Why don't you just go ahead and put these on. And then all of a sudden out of nowhere this man's brown shoes take off and walk out of that truck somehow. They are gone. What a story, ladies and gentlemen. Do you believe that that is what happened in this case? There is no possible way that happened in this case. No possible way.

> Who is Sarge? Where is Sarge? That's all he knows about—

> MR. SHANNON: May we approach the bench?

The defendant cites *State v. Webster*, 659 S.W.2d 286, 288 (Mo.App.1983), for the proposition that the prosecution may not argue an adverse inference if the witness appears equally available to the state and the defendant. The court can resolve the question of the absent witness' availability by considering three factors: *first,* one party's superior ability to know or identify the witness; *second,* the nature of the testimony one can expect the witness to give; *third,* the relationship between the particular party and the witness that might indicate whether the witness would more likely testify more favorably for one party than the other. *Id.; see State v. Valentine,* 587 S.W.2d 859, 864–65 (Mo.1979) (en banc).

The defendant now contends that the prosecutor's argument, to which defendant objected, permitted the jury to draw improper "adverse inferences" from the defendant's failure to call Sarge as a witness, a witness equally available to the defendant and the state. The State, he says, had an even greater ability than the defendant to identify and find Sarge. He argues that the police had the time the morning of the 29th at Acme Metal to walk up the street to the service station to find Sarge. In addition, it had access to the Department of Motor Vehicles to run the license number and the vehicle identification number to determine the ownership of the pickup truck Sarge drove. Thus, defendant argues, the court abused its discretion in allowing the state to draw the adverse inference that the defendant and the state had equal access to Sarge as a witness.

Nothing in the evidence indicates, however, that the arresting officers at Acme Metal had heard of Sarge or his possible location at that time. Nor does the evidence show that the pickup bore Missouri or any other registration plates.

The Attorney General responds that, in fact, the prosecutor in his argument only intended to suggest that, aside from the defendant's fictional account, "Sarge" did not exist at all; the defendant created "Sarge" to explain why when arrested he wore the tennis shoes that matched the prints found on the aluminum bars. Thus, the question in the prosecutor's argument: "Who is Sarge?"

Accordingly, the state asserts, adverse inference cases the defendant relies upon have no relevance in this case. In those cases, the appellate courts could determine whether the prosecuting attorneys' arguments referred to actual persons, their relationships to the parties and the nature of their anticipated testimony. In this case, the court cannot make such determinations.

■ In any event, the Attorney General correctly observes, the trial court in this and every other such case, has considerable discretion in allowing or rejecting the prosecutor's argument. An appellate court will not find an abuse of discretion in such instances unless it finds the prosecutor's argument "plainly unwarranted." *State v. Moore,* 620 S.W.2d 370 (Mo.1981) (en banc); *State v. Welsh,* 775 S.W.2d 557, 560 (Mo. App.1989); and *State v. Robinson,* 752 S.W.2d 949, 953 (Mo.App.1988). Reversal will follow only where the defendant sustains the burden of showing that, to the prejudice of the defendant, the prosecutor's argument had a decisive effect on the jury's verdict. *State v. Wood,* 596 S.W.2d 394, 403 (Mo.1980) (en banc); *State v. Keil,* 794 S.W.2d 289, 293 (Mo.App.1990).

■ The prosecuting attorney may comment on the failure of a defendant to call an available witness whom one might reasonably expect to testify in defendant's favor. *State v. Moore, supra.* The defendant's failure to call such a witness tends to create the logical inference that the defendant did not call the witness because his testimony would damage rather than assist the defense. *Id.; State v. Murphy,* 796 S.W.2d 429, 432 (Mo.App.1990); and *State v. Robinson, supra.* Moreover, where the facts make clear that the witness' testimony would favor the defendant, the court may justifiably find the witness one peculiarly available to the defendant, thus giving rise to the unfavorable inference. *State v. Moore, supra* at 374; *State v. Robinson, supra.*

In *State v. Williams,* 546 S.W.2d 54, 56 (Mo.App.1976), the prosecutor's argument referred to an unidentified man who, according to the defendant's testimony, witnessed the shooting in question. The prosecutor asked, "Who is that man? Where is he?" much as the prosecutor here asked, "Who is Sarge? Where is Sarge?" The court at 546 S.W.2d at 56 said,

> Though defendant did not know the alleged witness, he had seen the man on previous occasions and had been gambling with him prior to the shooting. Defendant could identify the alleged wit-

ness, could locate him through information obtained by talking to other persons who had gambled with defendant and the alleged witness on the day of the shooting, or could locate him in the neighborhood where defendant had previously seen him. Defendant also had the superior means of knowledge regarding the nature of the testimony of the alleged witness, and of the value of that testimony to him.... Defendant was the only person at the scene who saw or heard the alleged witness. The state had no knowledge of the existence of this alleged witness, no description of the unidentified man, and no indication of the contents of any testimony he might give. (Citation omitted.)

We perceive no significant distinction between the case before us and *State v. Williams.* We choose to follow it. Here, defendant Gillis and only Gillis could identify Sarge. According to his own testimony, the pickup belonged to Sarge, and Larry Hand had seen defendant Gillis driving that pickup on July 28, the day before Sarge allegedly drove Mr. Gillis to Acme Metals. Only defendant Gillis could locate Sarge by talking to the former employees and customers of the now closed neighborhood convenience store who allegedly knew Sarge. Defendant Gillis alone also had the superior means of knowing the nature of the testimony Sarge might give and of its value to the defense. He alone saw or heard Sarge. The record shows that the prosecution had no knowledge of Sarge's existence and had no physical description of Sarge until defendant Gillis testified at trial. Likewise, the prosecutor had no knowledge of what Sarge might say.

These facts present a perfect example of the occasions on which a prosecutor may freely comment on the absence of a witness. The facts in this case and in *Williams* and *Robinson* fully support the view that, where the testimony of the defendant or the defendant's witnesses taken as a whole justify the finding that the absent "witness" does not exist, the prosecutor may comment on the defendant's failure to produce the "witness."

When defendant objects to such prosecutorial arguments, the trial judge should invoke the ruling of *State v. Webster, supra*, 659 S.W.2d at 288, and consider the three factors: one party's superior ability to know or identify the alleged witness; the nature of the witness' likely testimony; and the relationship of the defendant to the alleged witness that might indicate whether his testimony would help or hurt one or the other party.

In this case, applying the *Webster* rule the trial judge did not abuse his discretion in overruling defendant's objection to the prosecutor's argument.

For the foregoing reasons, we affirm the judgment.